UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ELINOR HILTON and COLLEEN FAGAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>KRISTI NOEM, Secretary of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JOHN A. CONDON, Acting Executive Director, Homeland Security Investigations; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection; MICHAEL BANKS, Chief, U.S. Border Patrol; THE U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; HOMELAND SECURITY INVESTIGATIONS; U.S. CUSTOMS AND BORDER PROTECTION; U.S. BORDER PATROL; UNIDENTIFIED FEDERAL AGENCIES; and UNIDENTIFIED FEDERAL AGENTS,<br><br>    Defendants. | Case No. 2:26-cv-00092-JAW<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**REQUEST FOR IMMEDIATE RELIEF** |

## Introduction

In the face of clear video evidence, Defendants are forced to acknowledge the obvious–Plaintiffs observed immigration enforcement activities in public places, consistent with the First Amendment, and federal agents responded by gathering their biometric data and license plates, then threatening them. Barbero Decl. ¶ 7. Defendants also acknowledge the data was collected and maintained "in case it was later determined further investigations were required." *Id*. Defendants do not allege the agents suspected Plaintiffs of misconduct warranting investigation; they claim generically instead that agents had been "habitually met with protestor presence attempting to disrupt operations." *Id.* In other words, Defendants conducted surveillance of First Amendment activity without a basis to believe these Plaintiffs were involved in any wrongdoing.

In addition to these concessions, Defendants' declarations fail to respond to Plaintiffs' key arguments. For example, Defendants avoid divulging where Plaintiffs' data now resides, saying only that a search of a subset of undefined "systems" indicates that neither Plaintiff is under "investigation or monitoring" by certain agencies within ICE. Barbero Decl. ¶ 10 (searching only unspecified HSI systems); Wells Decl. ¶ 9 (only ERO systems). That intentionally avoids addressing the relevant question—namely, where the government is storing Plaintiffs' data. If Defendants did not retain Plaintiffs' biometric and other personal data, they could and would say so. What Defendants' declarations *don't say* is telling.

Faced with video evidence that federal agents unlawfully targeted Plaintiffs while they engaged in protected activity, Defendants seek to evade responsibility and offer no meaningful remedy. Defendants concede that agents made unlawful threats, Opp. 6, but insist that the agents' statements "do not reflect DHS policy." Opp. 6. Yet the only evidence of DHS policy they produce is a short email sent to ERO agents in the Boston Field Office just *hours* before Defendants filed their opposition and weeks after the conduct not only occurred, but became widely known. Wells

1

Decl., Ex. A. This email is entirely self-serving and for purposes of this litigation alone. It is not probative of any observed "policy," especially in light of record evidence showing that DHS agents in Maine and across the country have engaged in an undeniable pattern of threatening and harassing lawful observers. Hewey Decl., Exs. 13-16, 31-33, 44; Compl. ¶¶ 120, 138-44; Mot. 4-5 & n.2. Accordingly, the Court should order the limited relief Plaintiffs seek.

## I. Plaintiffs Remain Likely to Prevail on Their Claims

### A. Plaintiffs Are Likely to Succeed on the Merits

For Plaintiffs' data claims (Counts I and II), Defendants' use of surveillance tools to collect and retain Plaintiffs' biometric and other data is both chilling and adverse. Mot. 9 (citing *U.S. v. Moore-Bush*, 36 F.4th 320, 358 (1st Cir. 2022) ("sheer fear that the government may be watching chills associational and expressive freedoms") (Barron, C.J., concurring) (cleaned up). Defendants concede that Plaintiffs engaged in First Amendment-protected activity without interfering in their operations; that agents collected Plaintiffs' data because of their protected activity; and that data was retained. Opp. 1; Barbero Decl. ¶ 7; Wells Decl. ¶ 8. Plaintiffs are likely to prevail on these counts.

Defendants argue there was no First Amendment violation because Plaintiffs "were not entered into a database following the encounters." Opp. 8-9. But Plaintiffs' claims do not depend on their data being "entered" into a particular "database." Mot. 9-10; Compl. ¶¶ 81-82, 93-95. The collection of biometric and other data under these circumstances itself constitutes a First Amendment violation, and Defendants *do not deny* that they maintain the data they collected in some form.[1] They only say, based on a search of certain systems, that Plaintiffs are not under

---

[1] Also, the Wells Declaration says that 'ICE has no database or watchlist tracking protestors based on their First Amendment Activities.' Wells Decl. ¶ 9. But that speaks only about ICE, and even that claim fails to disavow that ICE maintains the collected information in some form.

2

"investigation or monitoring" by a component of ICE. Wells Decl. ¶ 9, Barbero Decl. ¶ 10. Defendants miss the point and elide the facts.

Finally, Defendants do not contest the merits of Plaintiffs' harassment claims (Counts III and IV). Nor could they, given the clear evidence of what multiple federal agents said to Plaintiffs for exercising their rights.

### B. Plaintiffs Have Standing to Pursue Prospective Relief

Unable to defend their actions on the merits, Defendants focus almost exclusively on Plaintiffs' standing to pursue prospective relief. That, too, fails.

#### 1. Plaintiffs Have Standing to Pursue Injunctive Relief on Their Data Claims (Counts I and II)

Counts I and II seek to enjoin Defendants from collecting and maintaining Plaintiffs' biometric and other data because of their protected activity. Defendants argue that Plaintiffs lack standing because they rely only on "speculation that they will be added to a database in the future." Opp. 9, 11. That premise is false. Plaintiffs have presented evidence that their information is *currently* retained by the government in some form, Mot. 10-11, and Defendants have not meaningfully disputed that claim, *supra* p. 1-2. Defendants thus entirely fail to address two of the three ways Plaintiffs satisfy standing on Counts I and II, namely Defendants' *ongoing* data retention and the chilling effect that has on Plaintiffs. Mot. 17-19.[2]

First, courts in similar cases have found "the retention of the information *itself* constitutes an injury" and an "independent harm," regardless of whether the plaintiff is likely to have any future encounters with law enforcement. Mot. 9-10; *cf. Alasaad v. Nielsen*, 2018 WL 2170323, at *11 (D. Mass. May 9, 2018); *Janfeshan v. CBP,* 2017 WL 3972461 (E.D.N.Y. Aug. 21, 2017).

---

[2] *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) is irrelevant where Plaintiffs' injury is based on *ongoing* conduct rather than past incidents. *E.g.*, *Ramirez Ovando v. Noem*, 2025 WL 3293467, at *10 (D. Colo. Nov. 25, 2025).

Second, Plaintiffs' First Amendment activity has been chilled by objectively reasonable fears about the ways their data may be weaponized. Courts have consistently recognized chill-based First Amendment injuries, particularly where, as here, the plaintiff has been directly and personally targeted. *Ozonoff v. Berzak*, 744 F.2d 224, 228-29 (1st Cir. 1984); *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493, 510-11 (1st Cir. 2021). That remains true under *Clapper*. *See Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 177 (D. Mass. 2025) (collecting cases). The chill in *Clapper* was "highly speculative" because the record lacked any evidence that the government would target the plaintiffs' overseas contacts, let alone succeed in intercepting communications. 568 U.S. at 410. Here, there is no "highly attenuated chain of possibilities." *Id.* Federal agents actually collected Plaintiffs' biometric and other data, and retained it. And agents have used similar data to subject similarly situated observers to adverse treatment. Mot. 18; *see also Grant v. Trial Court*, 784 F. Supp. 3d 475, 484 (D. Mass. 2025) (plaintiffs had objectively reasonable fear of adverse consequences based on treatment of other protestors). Defendants offer no response other than to deny that Plaintiffs appear in certain data systems which is unpersuasive for the reasons stated above. *Supra* p. 2.

Separately, the record demonstrates the impending and substantial risk that federal agents will repeat the unlawful collection and retention of Plaintiffs' biometric and other personal data. *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019) (future injuries "may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014))). Plaintiffs wish to continue observing and recording immigration operations. Hilton Decl. ¶ 37; Fagan Decl. ¶ 22. Defendants have directed agents to gather personal information about individuals engaged in this type of activity.[3] Mot. 4-

---

[3] Plaintiffs' video evidence shows that numerous federal agents are engaging in a deliberate and coordinated effort to collect observers' biometric and other personal data. Hilton Decl. ¶¶ 10, 13, 17, 19; Fagan Decl. ¶¶ 13, 15-17.

5, n.2. Even now, Defendants appear to maintain that agents can indiscriminately collect information about observers (even those who are not suspected of any wrongdoing whatsoever) merely because agents "habitually" encounter potentially disruptive protestors. Barbero Decl. ¶ 7.[4]

### 2. Plaintiffs Have Standing to Pursue Injunctive Relief on Their Harassment Claims (Counts III and IV)

With respect to Counts III and IV, Defendants argue that Plaintiffs "fail to establish a real and immediate possibility that officers will make such statements to them" and that such statements would not "create an injury in fact." Opp. 9.

First, it is untenable that the government would argue that the threats made by agents here do not cause injury, including an objectively reasonable chill. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) ("People do not lightly disregard public officers' thinly veiled threats [to retaliate against them] if they do not come around.").[5]

Yet Defendants insist that the chill Plaintiffs experienced is not "reasonable" because they sent a three-sentence email two days ago, attaching a seven-year-old memorandum. Opp. 14-15. The email provides no additional context and does not specifically instruct agents to avoid harassing or threatening individuals engaged in First Amendment-protected activity. The notion that this made-for-litigation email should alleviate Plaintiffs' chill is nonsensical. *See also* Hewey Decl., Ex. 42 (same memo with DHS cover page noting it "contains outdated information"). And it is particularly unconvincing given the pattern of similar incidents and the statements of high-ranking officials, all of which Defendants largely ignore. Mot. 19-20.

---

[4] Defendants seem to argue that collecting biometric and other personal data based on First Amendment activities is reasonable if agents encounter protestors elsewhere in the vicinity, or even in the past, who might disrupt operations. That suggests that agents not only violated the First Amendment, but did so consistent with Defendants' applicable policies.

[5] Defendants do not even acknowledge the threat to Plaintiff Hilton that agents would "come to [her] house" if she returned to observe future immigration enforcement actions.

5

Next, Defendants cite *Lyons* to argue that "[a]llegations about past encounters with a few officers do not establish a sufficient likelihood that these Plaintiffs will experience the same interactions again," Opp. 11-12. In *Lyons*, however, the plaintiff was unlikely to suffer repeated chokeholds because the Court would not assume that he would "repeat the type of misconduct"—traffic violations or resisting arrest—"that would once again place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320 (1988) (discussing *Lyons*, 461 U.S. at 105-106); *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) (distinguishing *Lyons* where plaintiffs "were not engaged in unlawful activity when they were shot, tear gassed, shoved, or pepper sprayed"). Here, Plaintiffs are at risk of injury not because of speculative future misconduct, but because they have engaged in (and wish to continue) constitutionally protected activity. Hilton Decl. ¶ 37; Fagan Decl. ¶ 22.[6]

Finally, Defendants argue that "immigration enforcement operations in Maine have diminished in scope since January 25, 2026, thus lessening further any likelihood of a repeat encounter." Opp. 12. The basis for this is one vague sentence in the Wells declaration. Wells Decl. ¶ 6. Even accepting some de-escalation of DHS activities, immigration enforcement clearly continues in Maine, and DHS has yet to arrest hundreds on the list of "1,400 targets here in Maine" that it announced in January. Hewey Decl., Ex. 1. Defendants thus do not negate Plaintiffs' reasonable fear that they must self-censor or face repeat reprisal. Indeed, this Court's habeas dockets show that Defendants continue to arrest and detain Mainers.[7] In short, there is ongoing

---

[6] *Laird v. Tatum*, 408 U.S. 1, 10 (1972), has no bearing on standing here. Mot. 18-19. *Schirmer v. Nagode*, 621 F.3d 581, 585-88 (7th Cir. 2010), is similarly inapposite, since the plaintiffs could not reasonably claim an ongoing chill based on the "isolated" misuse of a statute that could not fairly be read to encompass their conduct. *Rizzo v. Goode*, 423 U.S. 362 (1976), is even further afield. The plaintiffs challenged racially discriminatory police misconduct, not retaliation for exercising First Amendment rights, so no chill was alleged. And *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), does not concern standing, but rather the standard for municipal liability under 42 U.S.C. § 1983.

[7] *E.g.*, *Guedez v. Stamper*, No. 1:26-cv-00110 (D. Me.) (ECF 5) (arrested Feb. 26); *Castillo Gonzalez v. Stamper*, No. 1:26-cv-00120 (D. Me.) (ECF 7) (arrested Feb. 25); *Arroyave v. Stamper*, No. 1:26-cv-00093 (D. Me.) (ECF 7) (arrested Feb. 18); *Tzoy v. Stamper*, No. 1:26-cv-00067 (D. Me.) (ECF 7) (arrested Feb. 3).

immigration enforcement in the state that Plaintiffs wish to observe, and Plaintiffs have shown a real and immediate possibility of harassment if they were to do so.

> II. **The Balance of Harms and Public Interest Favor Plaintiffs, and the Requested Relief Is Necessary and Workable**

The Court presumes irreparable harm when a plaintiff has shown a likelihood of success on the merits of a First Amendment claim, and Plaintiffs here have further established that their protected activity has been chilled. Mot. 14-15; *supra* p. 3-5. Defendants cannot dismiss agents' conduct as unauthorized "empty threats," Opp. 1-2, 6, 17, while *also* asserting that a TRO preventing this conduct would impose "unnecessary burdens on federal immigration enforcement operations." Opp. 17. If Defendants do not intend to target observers, then the TRO imposes no burden at all. *Smith v. Trump*, 791 F. Supp. 3d 90, 99 (D. Me. 2025).

Defendants' arguments about the scope of relief are equally unavailing. The injunction sought here centers on specific enumerated prohibitions—data collection, maintenance, and threats—rather than a blanket injunction against retaliation, and is in line with recent First Circuit case law. *See, e.g., New York v. Trump*, 133 F.4th 51, 72 (1st Cir. 2025). Defendants' arguments about vagueness and counterproductivity, Opp. 18, also make little sense since the relief Plaintiffs seek would prohibit specific actions "**because of** their First Amendment-protected activity."[8] Mot. 20 (emphasis added). If Defendants truly do not target observers based on protected activity, agents should have no trouble complying (and certainly should not need a photograph of either Plaintiff to do so).

---

[8] Defendants repeatedly cite *Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004) (Opp. 15 n.1, 18), but the court in that case determined the plaintiff was "not the right party to pursue injunctive relief" because he was not likely to be subjected to the same unconstitutional search again. *Campbell* in no way suggests that plaintiffs with standing to seek injunctive relief on their own behalf are somehow unable to obtain that relief simply because the injunction might require government actors to respect the constitutional rights of nonparties, as well.

Dated: March 12, 2026

Respectfully submitted,

/s/ Melissa A. Hewey
Melissa A. Hewey
David M. Kallin
**Drummond Woodsum**
84 Marginal Way, Suite 600
Portland, ME 04101
(207) 253-0528
mhewey@dwmlaw.com
dkallin@dwmlaw.com

JoAnna Suriani*
Janine M. Lopez*
**Protect Democracy Project**
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
(202) 579-4582
joanna.suriani@protectdemocracy.org
janine.lopez@protectdemocracy.org

Genevieve Nadeau*
Kenneth Parreno*
**Protect Democracy Project**
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
genevieve.nadeau@protectdemocracy.org
kenneth.parreno@protectdemocracy.org

Jessica Marsden*
**Protect Democracy Project**
510 Meadowmont VIII. Cir. No. 328
Chapel Hill, NC 27517
(202) 579-4582
jess.marsden@protectdemocracy.org

Karen L. Dunn*
Jeannie S. Rhee*
L. Rush Atkinson*
Yotam Barkai*
John Paredes*
Benjamin J. Cabranes*
**Dunn Isaacson Rhee LLP**
401 9th Street, NW
Washington, DC 20004

(202) 240-2900
kdunn@dirllp.com
jrhee@dirllp.com
ratkinson@dirllp.com
ybarkai@dirllp.com
jparedes@dirllp.com
bcabranes@dirllp.com

*Pro hac vice*

9