**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

ELINOR HILTON, et. al.,

               Plaintiffs,

    v.

MARKWAYNE MULLIN, et. al.,

        Defendants.

Case No. 26-cv-00092-JAW

**DECLARATION OF DOE 1**

I, Doe 1, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age and a current resident of Portland, Maine, where I have lived and worked for a number of years.

2. I have been a member of a handful of community group Signal chats that were initially formed in January 2026 in response to the surge of agents from the Department of Homeland Security (DHS) to conduct immigration enforcement operations in Maine during Operation Catch of the Day.

3. The community groups bring together individuals concerned about Immigration and Customs Enforcement (ICE) and other DHS agents' dangerous and aggressive immigration enforcement and inhumane treatment of Maine residents, including non-citizens.

4. The members of the community groups engage with each other for the purpose of identifying and, when possible, observing and recording immigration enforcement activity— especially active abductions or arrests—on the streets of Maine. It is my understanding that

people use the community chats to get local updates on what ICE is doing in order to feel safer in their neighborhoods and to facilitate observing and recording ICE activity.

5.      I joined several community group chats in mid-to-late January 2026, around the time that Operation Catch of the Day was announced. I am still a member of some of these chats.

6.      I joined the community group chats because I was aware of news reports describing what I believed to be infringement on people's rights—such as racial profiling, physical abuses of immigrants and protestors, and abductions happening in secret—by ICE and DHS agents in other cities. I wanted to help make sure there was a public record of what was happening in my city and the community chats were the main way for me to connect with other community members who also wanted to observe and record ICE.

7.      I have not been paid to participate in the community groups or any related observation or protest activity.

8.      The community groups I was a part of were created for the purpose of providing awareness of ICE and DHS activity in certain neighborhoods so that members of the chat felt safe and could observe or record law enforcement if they chose to do so. Community observation like this allows for objection and opposition to abuses by the government.

9.      It is my understanding that the identities of group members and our communications were and are meant to be private and that the community groups operated with an expectation of privacy. I personally participated in the community group chats based on my understanding that they would not be made public or intentionally shared with anyone who did not share the same goals of observing and creating a record of what was happening in Portland.

10.      I am scared that if the federal government learns of our identities or has access to our internal communications, I and others in these community groups will be retaliated against or

2

somehow targeted by the government. I know that the plaintiffs in this lawsuit have already been threatened by ICE, and that ICE has made clear that it knows where a number of observers live. I worry that I might be next if the government found out I was in community group chats where the same observing and recording activities were discussed.

11.    I am specifically concerned that simply by being in a community group with others who were added to government watchlists because they observed and recorded ICE, I will be added to some sort of watchlist too because I have also done the same thing. I am also worried that this will lead me to being stopped at the border or impact my ability to travel, like one of the plaintiffs in this lawsuit. I am even afraid that the government will investigate me simply for being in a group chat with people it has labeled "domestic terrorists" for observing and recording ICE.

12.    If my identity and communications in these community group chats is disclosed to the federal government, I would significantly limit my participation and be much less likely to participate at all. In all likelihood, I would feel my only option was to leave the groups entirely to keep myself safe.

13.    I find the federal government's attempts to gain access to private organizing spaces to be a form of intimidation and would feel silenced if I knew the chats would be turned over to the very government agencies I believe regularly violate people's constitutional rights. Even though I want to exercise my right to hold federal agents accountable by observing their actions, if I had known before that my participation in these community chats would be known to the government, I probably would not have joined them in the first place.

14.    Given the documented abuses committed not only by DHS entities, including ICE and Customs and Border Patrol (CBP), but also the Department of Justice (DOJ), I believe that

3

disclosure of community group members and communications would, at a minimum, discourage membership in the group chats and likely would lead to its disbandment—even though I am not aware of anyone in the group chats planning or engaging in any unlawful activity.

15.     I am aware of the federal government's use of law enforcement and other resources to paint individuals and groups who oppose its positions and tactics—including those who are just exercising their right of free expression in non-violent ways—as dangerous "agitators," "Antifa," and "terrorists." I am also aware that other legal observers, including the plaintiffs in this lawsuit, have already been subjected to threats and retaliation, criminal charges, or physical force because they observed and recorded ICE agents. Given that these community group chats include individuals who hold and share views contrary to the government, I am certain that any disclosure of members or communications would scare others away from participating in the community groups and from continuing to engage in First Amendment activities.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 30, 2026.

_____/s/ Doe 1_____
Doe 1