**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

|  |  |
|---|---|
| ELINOR HILTON, et. al., <br>                 Plaintiffs, <br><br>    v. <br><br><br> MARKWAYNE MULLIN, et. al., <br><br>          Defendants. | Case No. 26-cv-00092-JAW |

**DECLARATION OF DOE 2**

I, Doe 2, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age, a current resident of Portland, Maine, where I have lived and worked for a number of years.

2. I have been a member of several community group Signal chats that initially were formed in January 2026 in response to the deployment of immigration agents from the Department of Homeland Security ("DHS") to conduct enforcement operations in Maine during Operation Catch of the Day.

3. The community chats bring together individuals worried about Immigration and Customs Enforcement ("ICE") and other DHS agents' dangerous and aggressive immigration enforcement.

4. It is my understanding that people join the community chats for the purpose of observing and being aware of ICE activity, including when ICE was documented violating the constitutional rights of people they were arresting or coming into contact with. I also understand

that people join the chats so they can be aware of ICE's activities in order to feel safer in their neighborhoods.

5.      I joined the community group chats in or around late January 2026, close to when Operation Catch of the Day was announced. I am still a member of some of these chats.

6.      I joined the community chats because I had seen reports that ICE and DHS agents in other cities were racially profiling black and brown people and arresting them regardless of their immigration status. From what I have observed and seen in the news, operations like Catch of the Day are large operations, but they want to conduct their operations in secret so the public does not know what is happening. I think it is important that my community witness what is happening so they can voice their opposition to it and expose or deter any lawbreaking or unconstitutional behavior. I also wanted the ability to document any arrests I observed in case the agents violated anyone's rights. I think it's important for people to understand the truth of what's happening.

7.      I was not paid for my participation in the community group chats or any related activity.

8.      The members of the community chats I was a part of limited themselves to sharing information on local ICE and DHS activity. I do not recall any instance in which anyone discussed interfering with an arrest, acting violently against ICE or DHS agents, or doing anything I thought was unlawful.

9.      I participated in the community group chats expecting that my communications and my participation in the chat itself would remain private. It is my understanding that the identities of group members and our communications were and are meant to be private.

10.     I would be very afraid if the federal government were to gain access to the community group chats and my membership in those chats. I saw recently that the federal government used Signal chats in communities to criminally investigate observers and protestors in Minneapolis and to criminally charge some of them. Had I known that the federal government would try to gain access to my membership and the community chats I am in, I would have significantly changed how I participated in them, or not joined at all. If my membership in the community chats is disclosed now, I would feel I had no choice but to leave them all to keep myself safe from the government investigating and retaliating against me. I think people in this country should be able to share information with each other without being afraid of being incarcerated because of it.

11.     I am just as afraid of the Department of Justice (DOJ) being given access to this information about me as I am of ICE and DHS. I see little difference between sharing this information with DOJ versus DHS, especially because I have seen reports that these agencies regularly share information with each other. If anything, I would be more concerned about sharing the community chats with DOJ, because I personally feel less vulnerable to DHS given my personal privileges.

12.     I am also aware that the federal government has made some shocking leaps to characterize people who oppose its policies and actions as criminal "agitators," "extremists," "terrorists," and "Antifa." This is especially distressing to me given that the purpose of the community chats I participated in was to help people feel safer by encouraging public transparency and debate about the federal government's immigration enforcement in Maine. Now that views like mine are being considered "domestic terrorism" by the government, I am certain that if the membership or any communications from these community group chats were

disclosed it would scare others away from participating and from continuing to engage in expressive activities.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 3, 2026.

_____*/s/ Doe 2*_____
Doe 2