## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

ELINOR HILTON, COLLEEN FAGAN,
POLYXENIA PANTOS, and CARLYN
WILLIAMS on behalf of themselves and all
others similarly situated,

   Plaintiffs,

   v.

MARKWAYNE MULLIN, Secretary of
Homeland Security; TODD LYONS, Acting
Director, U.S. Immigration and Customs
Enforcement; JOHN A. CONDON, Acting
Executive Director, Homeland Security
Investigations; RODNEY SCOTT,
Commissioner, U.S. Customs and Border
Protection; MICHAEL BANKS, Chief, U.S.
Border Patrol; THE U.S. DEPARTMENT
OF HOMELAND SECURITY; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; HOMELAND
SECURITY INVESTIGATIONS; U.S.
CUSTOMS AND BORDER
PROTECTION; U.S. BORDER PATROL;
UNIDENTIFIED FEDERAL AGENCIES;
and UNIDENTIFIED FEDERAL AGENTS,

   Defendants.

Case No. 2:26-cv-00092-JAW

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' INVOCATION OF APPLICATION OF THE FIRST AMENDMENT TO WITHHOLD RELEVANT DISCOVERY

**INTRODUCTION**

Plaintiffs have refused to produce a third of their responsive documents, heavily redacted over half the documents they produced, and instructed witnesses not to answer questions about the activities they have placed at issue in this litigation. They have done so based on an asserted First Amendment privilege that they argue permits them to withhold communications among the named Plaintiffs and potential class members and even Plaintiffs' attendance at public protests. In other words, having sued the government, Plaintiffs now seek to assert privilege to prevent the government examining basic facts relating to Plaintiffs' and proposed class members' activities. Plaintiffs attempt to shield any inquiry into *inter alia* their tactics used to track law enforcement, conversations that the named Plaintiffs had with others during the week of January 20-26, and the purpose of the Signal groups. Plaintiffs acknowledge there is no "case exactly like ours," July 21, 2026 Hr'g Tr. 9:13-14, and this Court should not be the first to expand the First Amendment well past the bounds given by the Supreme Court and the First Circuit.

**ARGUMENT**

The First Amendment protects against "compelling a private organization to reveal the identities of its members where such disclosure will result in the harassment of existing members and the discouragement of new members can constitute a violation of the right to freedom of association." *United States v. Comley*, 890 F.2d 539, 543 (1st Cir. 1989). That right exists to allow effective speech through the "combining [of] one's voice with the voices of others" and to prevent "essentially silenc[ing] views that the First Amendment is intended to protect." *Rumsfeld v. FAIR*, 547 U.S. 47, 68 (2006) (citation omitted).

To determine whether First Amendment protection applies, the Court engages in a two-part analysis. *First*, the party seeking protection must "make the requisite *prima facie*

1

showing of arguable First Amendment infringement," *Nat'l Org. for Marriage v. McKee*, 723 F. Supp. 2d 236, 240 (D. Me. 2010)—which is that "the disclosure requirement *will* result in harassment of current members, a decline in new members, or other chilling of associational rights," *Comley*, 890 F.2d at 543 (emphasis added)—based on "objective and articulable facts, [going] beyond broad allegations or subjective fears." *McKee*, 723 F. Supp. 2d at 242. *Second*, if the plaintiff makes that threshold showing, "the burden then shifts to the government to show both a compelling need for the material sought and that there is no significantly less restrictive alternative for obtaining the information." *Comley*, 890 F.2d at 544.

## I. The First Amendment Does Not Apply to Plaintiffs' Communications or Other Protest Activities.

The key documents at issue are Signal chats that Plaintiffs described as "rapid response" groups created ████████████████████████████████ ████████████ *See* Ex. 1 (Pantos Dep.) 30:14-17; *see* Ex. 2 (Hilton Dep.) 40:20-23 (same). Beyond those general statements, Defendants could not learn what exactly "rapid response" groups did or the Signal chats' contents because Plaintiffs' counsel instructed their witnesses not to answer questions about "any of the sort of operations or internal communications of the group." Ex. 3 (Williams Dep.) 40:18-20; *see also* Pantos Dep. 29:25-33:3; Hilton Dep. 40:24-42:19, 43:22-25, 49:4-14, 63:13-64:3, 92:20-25.

Plaintiffs' withholding of these chats and foreclosure of their questions about them is unwarranted. The declarants here describe these chats as "community chats," *see, e.g.*, Doe 3 Decl. ¶ 2, ECF No. 75-3; Doe 1 Decl. ¶ 2, ECF No. 75-1, and Plaintiffs argue that "the First Amendment privilege applies to all manners of formal and informal associations or groups." Pls' Br. at 2. But they provide no support; none of their cited cases show that

2

an individual can claim the First Amendment privilege on behalf of a group, nor that engaging in an ill-defined and informal group chat gives rise to a First Amendment privilege. *See Sullivan v. Univ. of Wash.*, 60 F.4th 574, 580 (9th Cir. 2023) (denying a claim of infringement upon associational rights by members of a university committee); *Donohue v. Milan*, 942 F.3d 609, 616-17 (2d Cir. 2019) (involving non-union members of an organization); *Planned Parenthood Federation v. Center for Medical Progress*, 2018 WL 2441518, at *11 (N.D. Cal. May 31, 2018) (involving donors to an established nonprofit). Instead, these cases align with the Supreme Court's and First Circuit's decisions on this issue, which all involved defined organizations invoking the privilege.[1]

But even if individuals could invoke a First Amendment privilege, it would not apply. The reach of the First Amendment is squarely in dispute in this case, as is whether the "rapid response" chats relate to only First Amendment-protected activity. Plaintiffs submit there is a right to "document[] immigration enforcement." Pls.' Br. at 3. But unlike in *Glik v. Cunniffe*, where the plaintiff "caught sight of three police officers" and decided to videotape them while "walking past the Boston Common," *see* 655 F.3d 78, 79-80 (1st Cir. 2011), the Signal chat participants were not merely videotaping officers they came across by happenstance. Instead, at a minimum, ███████████████████ ████████████████████████████████ Hilton Dep. 35:23-38:9;

---

[1] *See First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1122 (2026) (State's "demands for a charity's private member or donor information" by requiring production of "donations made to [the nonprofit]" violated the First Amendment); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 602 (2021) (petitioners were "tax-exempt charities that solicit contributions in California"); *NAACP v. Alabama*, 357 U.S. 449 (1958) ("Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is of the same order."); *Comley*, 890 F.2d at 543 (involving a non-profit corporation objecting to a subpoena in a criminal trial of its founder).

████████████████████████████████████████████ *see, e.g.*, Ex. 4 (Plaintiffs-000219); Ex. 5 (Plaintiffs-000239); Ex. 6 (Plaintiffs-000222); Ex. 7 (Plaintiffs-000214); ██████████████████████████████████████ Hilton Dep. 182:16-18; ████████████████████████████████ *id.* 187:6-13; and ██████ ██████████████████████ *Id.* 72:5-73:3; Ex. 8 (Whistle Training). Possible participants on these Signal chats were also going ███████████████████████████████████ ██████ *See* Hilton Dep. 192:1-193:10. Defendants dispute that all such conduct is protected First Amendment activity as recognized in *Glik*. Plaintiffs cannot resolve that dispute and foreclose discovery into the substance of the chats simply by characterizing *all* activity coordinated by the chats as protected observation.

Further, Plaintiffs fail to acknowledge the different analyses that apply to (1) the names of the Signal chats' participants, and (2) the substance of their communications.

**The Signal Chats' Substance.** Plaintiffs argue that the Signal chats' substance is protected from disclosure. *See* Pls.' Br. at 4. But *Comley* questioned whether such a First Amendment claim exists, stating that it "ha[d] reservations" about the plaintiff's First Amendment argument because the subpoena sought "to discover the substance of the information . . . , not the identities of the informants or associates." 890 F.2d at 543. And while compelled disclosure of names might infringe associational rights, *see, e.g.*, *Davenport*, 146 S.Ct. at 1126 (a "demand for private donor information injures the group's First Amendment associational rights."), the Supreme Court has not recognized a right to prevent disclosure of communications' substance.

To be sure, some out-of-circuit case law suggests that some internal information can be protected from disclosure because "the right to exchange ideas and formulate

4

strategy and messages . . . in private" is "[i]mplicit in the right to associate with others." *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010). But those cases concern internal deliberations to decide how an association wishes to speak as a group. *See id.*; *see also City of Greenville v. Syngenta Crop Prot., Inc.*, No. 11-MC-10, 2011 WL 5118601, at *6 (C.D. Ill. Oct. 27, 2011) ("The constitutional concern is to protect the First Amendment rights of individuals to associate with each other and to speak as a group."); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011) ("[S]ome collective efforts to express ideas will only be undertaken if they can be undertaken in private."). Those cases do not extend to what Plaintiffs advocate for here.

The privilege cannot be used as both a sword and shield and is weaker in civil litigation than when there is "compelled disclosure." *See NAACP*, 357 U.S. at 462. In *McKee*, Judge Rich recognized this distinction by noting that the State could seek records "for purposes of defending against a suit challenging the constitutionality of Maine laws, not for purposes of a criminal investigation." 723 F. Supp. 2d at 243. Plaintiffs are not resisting a government investigation; they brought this action to challenge the constitutionality of Defendants' conduct and thereby placed their own activities and Defendants' responses to them at issue. Plaintiffs assert they were wronged by the government but seek to make relevant information off limits. They "cannot have it both ways." *Anderson v. Nixon*, 444 F. Supp. 1195, 1199 (D.D.C. 1978).

Regardless, Plaintiffs' invocation of the First Amendment is overbroad. Plaintiffs withheld approximately 80 documents on the basis of the First Amendment. *See* Pls.' Ex. A to Pls.' Br, ECF No. 69-2. They also redacted more than one-half of the documents that they produced in this case. *See* Ex. B to Pls.' Br., ECF No. 69-3. Plaintiffs produced

5

approximately 165 documents; almost 100 were redacted. Those redactions interfered with the depositions; Plaintiffs could not recall some events and admitted the redactions affected their recollection. *See, e.g.*, Hilton Dep. 136:4-10, 139:21-140:2; Williams Dep. 61:1-10, 63:21-23.[2] Plaintiffs' counsel foreclosed questions into the group chats' names, *see* Ex. 12 (Fagan Dep.) 88:16-25, "any sort of operations . . . of the group," Williams Dep. 40:10-22; *see id.* 48:9-15 (objecting to whether "reported sighting[s]" were a subject of the chats), the number of people in the chats, *id.* 45:16-24, whether those chats were coordinated locally or nationally or by some political group, *id.* 46:4-47:13, and whether known individuals were members. Hilton Dep. 194:11-16. That foreclosure prevented Defendants from learning about relevant information to test Plaintiffs' claims and even information that Defendants could discover to test their assertion of the privilege. Nothing in the case law supports this obstruction.

*Community Members' Names.* Plaintiffs also argue that the names of third parties with whom Plaintiffs directly communicated are protected by the First Amendment. But Plaintiffs have made distinctions, providing Defendants with some names while redacting others. *See* Ex. 13 (Chat Participant List); *see* Hilton Dep. 142:11-19 (Plaintiffs' counsel noting that they withheld the identities of some with whom Hilton directly communicated). These names should not be withheld because for the reasons stated above, the First Amendment does not apply here. Regardless, Defendants have proposed alternatives to Plaintiffs to ensure that the individuals' names are protected. Defendants propose having those witnesses names labeled "Attorney's Eyes Only" under the protective order at least

---

[2] Examples of redacted documents used in those depositions include what Defendants have attached as Exhibits 9 (Plaintiffs-000211), 10 (Plaintiffs-000306) and 11 (Plaintiffs-000329).

as an initial matter, *see* Heightened Confidentiality Order ¶ 4, ECF No. 28, and Defendants would not oppose having those individuals' names anonymized.

*Attendance at Public Protests.* Plaintiffs also prevented discovery into the protests attended by Plaintiffs. *See* Pantos Dep. 87:15-89:14 (instructing one plaintiff not to answer questions about protests because "[i]t's First Amendment activity and associational in nature"); Fagan Dep. 116:15-117:9 (same); Williams Dep. 21:19-22:25 (same); Hilton Dep. 206:3-207:23 (same). Plaintiffs do not explain why this information is protected, nor could it be as any protest activity would be public.

## II.   Plaintiffs Have Not Demonstrated a Chilling Effect.

Plaintiffs have not made the threshold showing that disclosure of the information at issue would result in a cognizable chilling of associational rights. Although Plaintiffs argue that disclosure could lead to "some probability" of a chilling effect, *see* Pls.' Br. at 4, that is not the standard used by *McKee* in which Judge Rich said the record needs "objective and articulable facts" of chilling. *See* 723 F.Supp.2d at 242. But Plaintiffs' argument primarily relies on the same allegations undergirding their Amended Complaint about Defendants creating a database for those engaged in First Amendment activity. *See* Pls.' Br. at 4-6. Plaintiffs also cherry pick documents to suggest that protestors were investigated solely based on First Amendment activity. *See id.* at 6. But as Defendants have explained, DHS's policy is not to investigate protestors for First Amendment activity. *See* May 17, 2019 Mem. for All DHS Employees, ECF No. 18-4.

Plaintiffs' declarations do not establish a cognizable chill. Their assertion that they would have communicated differently had they anticipated discovery, *see* Doe 3 Decl. ¶ 9 (stating an expectation that Signal messages will be private); Doe 1 Decl. ¶ 13, does not describe a First Amendment harm but a consequence of ordinary litigation. The declarants'

asserted consequences also remain speculative. They identify alleged fears that the chats will be made public leading to violence by others, Hilton Decl. ¶ 8, ECF No. 75; Doe 3 Decl. ¶ 11, or that they will be criminal investigated. Doe 2 Decl. ¶ 10, ECF No. 75-2; Doe 3 Decl. ¶ 11. But Plaintiffs do not offer "objective and articulable facts" showing that those consequences are reasonably likely to occur; their assertions are only "broad allegations or subjective fears." *McKee*, 723 F. Supp. 2d at 242 (citation omitted).

Likewise, Plaintiffs all but ignore that there is a heightened protective order. As recognized in *McKee*, a protective order can negate any concern about a plaintiff's proposed chilling effects because it would prevent his feared negative repercussions. *Id.* at 241. Here, Defendants have gone further by proposing anonymization of nonparty identities and Attorneys' Eyes Only treatment, mitigating Plaintiffs' asserted fears of public exposure or harassment. Their privilege claim thus fails at the threshold.

III.    **Even if Plaintiffs Established a First Amendment Burden, Defendants Have a Compelling Need for the Information and No Other Means of Obtaining**

Even if the Plaintiffs' made a *prima facie* showing, Defendants have demonstrated a "compelling need for the material sought and that there is no significantly less restrictive alternative." *McKee*, 723 F. Supp. 2d at 242, *aff'd*, *In re Nat'l Org. for Marriage*, No. 10-1350, 2010 WL 11816264, at *1 (1st Cir. June 7, 2010) (finding "a compelling interest in defending" the constitutionality of a law). The same principle applies here. Plaintiffs have accused Defendants of unconstitutional conduct and seek prospective relief. Defendants have a compelling interest in obtaining evidence necessary to test Plaintiffs' allegations and defend against that relief, and this discovery cannot be obtained by other measures.

***The Existence of a "Policy" and Defending Against Class Certification.*** The key question in this case is whether Defendants have a policy to collect and upload Mainers'

biometric data based on First Amendment activity. *See* Am. Compl. ¶ 31. Defendants deny that such a policy exists, and Plaintiffs point only to their own experiences as evidence of the alleged policy. *See* Hilton Dep. 159:12-19 ████████████████████████ ████████████████████████████████████████████ Pantos Dep. 78:2-6 (████████████████████████████████ The Signal messages will reveal whether others with whom Plaintiffs directly communicated had interactions like those alleged. Plaintiffs recognize that the basis for placing individuals into a database is a key issue. *See* Pls.' Br. at 6 (citing Exs. L & N to Pls.' Br.).

Also, Plaintiffs have indicated that they may seek to certify a class at the PI stage. *See* July 21, 2026 H'rg Tr. at 31:11-12. Plaintiffs' proposed class is comprised of "[a]ll individuals who have exercised or will exercise their constitutional right to peacefully observe or record immigration enforcement operations conducted by Defendants in the District of Maine and whose biometric data or other personal information is or will be collected and maintained by Defendants because of that activity." Am. Compl. ¶ 197. Defendants are entitled to discovery into whether such a class is "ascertainable," *see In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015), and whether "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). To be sure, there are a handful of documents ████████ ██████████████████████████████████ that could be construed as ████████ ████████████████████████████████████████████████ ████████████████████ but the Signal chats can help determine (1) whether others had similar incidents with law enforcement, (2) whether this class action "would denigrate into a series of mini-trials," *see Mattoon v. City of Pittsfield*, 128 F.R.D. 17, 21 (D. Mass.

9

1989), and (3) whether these specific instances ████████████████████████

████████████████████████████████████████████████

***Tracking Federal Law Enforcement.*** Another key issue is whether Defendants' officers acted reasonably by checking license plates or investigating individuals who followed them. For example, Plaintiff Hilton and others followed ICE to an area behind a Home Depot that was not easily observed. *See* Hilton Dep. 65:16-68:16. Hilton admitted that she and others on these Signal chats were ████████████ ████████████ ████████████████████████████, *see id.* 39:2-20, 83:17-22, presumably to alert others to ICE's presence and coordinate disruptions. Whether Defendants' officers acted reasonably will be part of the analysis of any individual encounter.

***Plaintiffs' Alleged Ongoing Injury.*** Plaintiffs also argue that Defendants have no need for discovery concerning whether they continued to observe immigration-enforcement activity because foregoing opportunities to observe is not an element of their retaliation claims. Pls. Br. at 7-8. That misses the point. Plaintiffs seek prospective injunctive relief and rely on an alleged continuing chill from engaging in protected activity. Evidence concerning whether and to what extent Plaintiffs continued that activity after the challenged events is relevant to the existence, extent, and cause of their prospective injury, and Plaintiffs alone possess that information.

## CONCLUSION

The Court should order disclosure of Plaintiffs' withheld documents and order them to remove all redactions where information was withheld based on the First Amendment.

Dated: August 11, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

10

ALEXANDER HAAS
Branch Director

*/s/ J. Stephen Tagert*
NATALIE M. VILLALON
J. STEPHEN TAGERT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 305-5486
Natalie.M.Villalon@usdoj.gov
Stephen.Tagert@usdoj.gov

ANDREW B. BENSON
United States Attorney

JOHN G. OSBORN
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
John.Osborn2@usdoj.gov

*Counsel for Defendants*

11