**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| ELINOR HILTON, COLLEEN FAGAN, POLYXENIA PANTOS, and CARLYN WILLIAMS,<br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JOHN A. CONDON, Acting Executive Director, Homeland Security Investigations; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection; MICHAEL BANKS, Chief, U.S. Border Patrol; THE U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; HOMELAND SECURITY INVESTIGATIONS; U.S. CUSTOMS AND BORDER PROTECTION; U.S. BORDER PATROL; UNIDENTIFIED FEDERAL AGENCIES; and UNIDENTIFIED FEDERAL AGENTS,<br><br>Defendants. | Case No. 2:26-cv-00092-JAW |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**APPLICATION OF FIRST AMENDMENT PRIVILEGE**

Plaintiffs allege that Defendants are engaged in an unconstitutional pattern or practice of collecting and maintaining personal information about people who exercise their First Amendment right to observe and record immigration agents in public. Despite having direct access to all the information they might need to prove otherwise, Defendants want to conduct a fishing expedition into private community group chats in which Mainers discuss and coordinate their protected activity. Defendants argue, in essence, that because there is an old DHS memo[1] prohibiting the collection and maintenance of information about individuals exercising their First Amendment rights, that cannot possibly be what agents are doing in the field—instead, the agents must have some other good reason to violate observers' rights and they need these private chats to determine what that reason is . . . Defendants' justifications for intruding into these private associations fall short in many respects, and if credited, could have profound consequences for communities (and litigation) nationwide.

## I. The First Amendment Privilege is Applicable to the Community Group Chats

Plaintiffs are not refusing to produce their own communications with third parties relevant to this case. Rather, Plaintiffs have withheld (or redacted) only documents and information that reveal the identities of, discussions among, and strategies used by, members of community group Signal chats (sometimes called "rapid response" groups).[2] Such information is squarely protected by the First Amendment.

[1] Whether that memo remains or has always been in effect is disputed. ECF No. 29 ¶¶ 152–53.

[2] In addition to producing responsive documents, Plaintiffs have identified other individuals present at the encounters alleged in the First Amended Complaint (to the extent they know), and provided Defendants with the names of family, friends, and others with whom they had communications relevant to the encounters or otherwise responsive to Defendants' discovery requests. Def. Ex. 13; Nadeau Decl. ¶¶ 4, 6. Thus, Plaintiffs have in good faith "provid[ed] Defendants with some names while redacting others." Def. Br. at 6. Plaintiffs have not withheld *any* communications regarding the encounters alleged in the First Amended Complaint. *See* ECF No. 59 at 2.

First, the associational rights protected by the privilege flow to individuals who have come together to advance a common goal or purpose—in this case to document ICE enforcement activities in public—not to organizations. Thus, the privilege applies even though Plaintiffs are asserting it here and the community group chats are not "formal" organizations.[3] *See*, *e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2018 WL 2441518, at *10 (N.D. Cal. May 31, 2018) ("Associational rights derive from individuals' own First Amendment protections. . . . The case law does not suggest that the formal organizational status of the 'association' at issue controls application of the privilege"); *Aldapa v. Fowler Packing Co.*, 2016 WL 3361807, at *6 (E.D. Cal. June 16, 2016) ("[I]t is irrelevant for purposes of invoking this privilege whether the individuals belong to a formal, corporate organization."); *Minter v. Aurora*, 2021 WL 5067593, at *9 (D. Colo. Sept. 29, 2021) (pre-defined entity not required because "[a]t the core, the First Amendment associational privilege derives from an individual's First Amendment right to associate, not any type of right held by the organization").

Second, the community groups do not somehow lose protection because of the collective nature of their protected activities. While arguing half-heartedly that the chats are not covered by the privilege because the group is not sufficiently organized, Defendants simultaneously suggest that the coordination occurring via these chats takes them outside of the First Amendment protections made clear in *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011). Def. Br. 3 ("chat participants were not merely videotaping officers. . . by happenstance"). That makes little sense and finds no support in *Glik* or other caselaw. *See, e.g.*, *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 832–33 (1st Cir. 2020) (regular secret recording of on-duty police officers in

[3] In addition to the Doe declarations, each Plaintiff has clearly testified that the purpose of the group chats is to support and facilitate the observation and documentation of ICE activity in their communities. Pantos Dep. 29:15–30:17; Hilton Dep. 40:7–23; Williams Dep. 40:3–7; Fagan Dep. 84:16–85:19.

public by civil rights activists was protected); *Am. Civ. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) (enjoining law that would criminalize program of recording police officers).

Further, there is substantial precedent—and good reason—for protecting the substance of communications among the community group chat members as well as their identities. It is not clear that Defendants are arguing that group membership is *not* potentially protected, but the law is clear on the point.[4] Defendants *do* argue that if the content of group communications is ever protected—and it is, *see, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010), cited generally by *Nat'l Org. for Marriage v. McKee*, 723 F. Supp. 2d 236, 240 (D. Me. 2010) for the applicable standards—that protection only applies to deliberations as to how an association "wishes to speak as a group." Def. Br. 5. But Defendants read the caselaw much too narrowly. *Perry*, 591 F.3d at 1162 (protecting internal strategy discussions and noting "[t]he existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities").

Finally, even if the government's pure speculation that the chats include some discussion of unprotected activity were correct (which Plaintiffs dispute as a matter of both fact and law[5]), they are still subject to the privilege against disclosure. "The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982); *see also In Re Grand Jury Proceeding*, 842 F.2d 1229, 1234–45 (11th

[4] Defendants are internally inconsistent in terms of whether they claim to need the identities of the group members, arguing both that they must learn who these people are and also that they would accept anonymized versions of the documents.

[5] Defendants cite no authority for the proposition that activities like safely following government vehicles in public and tracking government license plates are not protected, especially when these activities are in furtherance of observation and recording. Defendants also misrepresent Plaintiffs' testimony on the topics they list at the top of page 4 of their brief, including the supposed connection to the group chats. *See, e.g.,* Hilton Dep. 72:15–73:13; 192:1–193:5.

Cir. 1988) (that an organization engages in a mix of expressive and commercial activities does not alter the standard of review, what matters is "the effect of the challenged state action on the [] freedom of expressive association").

**II. Plaintiffs Have Met Their Burden of Demonstrating a Likely Chilling Effect**

Defendants do not dispute the substantial evidence Plaintiffs have set forth as to the likely chilling effect disclosing community group chat membership and communications to the government will have on those groups. In fact, they barely acknowledge the Doe declarations and ignore entirely the public record demonstrating why the chat members have good reason to be fearful of both DHS and DOJ. *Cf. McKee*, 723 F. Supp. 2d at 241–42 (highlighting that the plaintiff did not adduce direct evidence from anyone who would themselves be chilled and distinguishing the case from *Perry* and *Dole v. Serv. Emps. Union*, 950 F.2d 1456 (9th Cir. 1991)). Instead, they simply wave away this substantial evidence as "subjective" and insist that the Confidentiality Order in this case is sufficient to mitigate those fears. But the evidence readily supports the conclusion that any reasonable person—and the actual participants in these group chats—would be chilled, even, if not especially, by disclosure to the government.

A number of courts applying the First Amendment privilege or similar analyses have acknowledged that confidentiality/protective orders limiting disclosure to the government are not always sufficient to mitigate likely chilling effects when disclosure to the government itself is what people fear. *See, e.g., First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1130–31 (2026); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021); *Perry*, 591 F.3d at 1165; *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002). And it is the chilling effect that matters to the analysis, not the intentions of any particular government representative. Here, there is a considerable record substantiating the reasons chat members fear the

government—including DOJ. Even disclosing documents as "attorney eyes only" or somehow anonymizing them would still be understandably chilling in the specific context of this case. For example, the communications may be used to identify chat members through other means, or to otherwise build a record of their activities, or to try to infiltrate the groups.[6] ***Indeed, recent reporting shows the government doing exactly what community members fear***.[7] When the government has been brazen in its attempts to demonize—if not criminalize—the specific kinds of protected associations at issue here, no form of disclosure can mitigate the chilling effect.

*McKee* does not require the court to conclude otherwise. Judge Rich did not suggest that the existence of a confidentiality order should overcome the privilege in all circumstances—indeed, if that were the case then the privilege would hardly exist at all.

**III. Defendants Cannot Establish a Compelling Need for the Community Group Chats**

Tellingly, Defendants devote relatively little attention to meeting their burden of proof—perhaps because they struggle to demonstrate relevance, never mind a compelling need for the documents and information they seek. Instead they summarily insist that because Plaintiffs have put one First Amendment right at issue (the right to observe), they cannot claim any other First Amendment protection (the right to associate) from discovery, even though Plaintiffs have not put the membership or communications of the community groups at issue here. *Cf. McKee*, 723 F. Supp. 2d 236 (plaintiff required to produce information directly relevant to testing its key allegations).

---

[6] *See, e.g.,* Hannah Critchfield & Shane Shifflett, *How ICE Is Weaponizing Social Media Against Its Critics*, Wall St. J. (Aug. 3, 2026), https://tinyurl.com/epateyrj; David Ingram, *The FBI is investigating Minnesota Signal chats tracking ICE, Patel says*, NBC News (Jan. 26, 2026), https://tinyurl.com/4b577c6h.

[7] Alan Feuer & Ernesto Londono, *U.S. Investigated Left-Leaning Groups During Minnesota Immigration Crackdown,* N.Y. Times (Aug. 13, 2026), https://tinyurl.com/nhktt5cz; *see also United States v. Sant*, No. 26-cr-00115 (D. Minn. Aug. 13, 2026), ECF No. 212.

Most importantly, Defendants fail to explain how community group chats their agents have not seen—and what they speculate is being discussed in those chats—could possibly justify agents' actions in the field after the fact.[8]

Defendants vaguely suggest that the chats will be relevant to the analysis of individual encounters, but fail to explain how. None of the withheld or redacted chats include discussions with or by Plaintiffs regarding their alleged encounters.[9] ECF No. 59 at 2. Otherwise, for the reasons described above, it is not at all clear how the chats can add to or alter either agents' own observations and understanding of incidents in which they were involved, or whether and why they collected observers' personal information.[10]

Defendants' argument that the community group chats may be necessary to determine whether the alleged class is ascertainable and shares common questions of law or fact likewise does not hold up. Plaintiffs allege a class under Rule 23(b)(2) ("the party opposing the class has acted or refused to act on grounds that apply generally to the class . . ."), not (b)(3). Ascertainability is not at issue where, as here, plaintiffs seek only declaratory and injunctive relief under Rule 23(b)(2). *See Tassinari v. Salvation Army*, 349 F.R.D. 10, 32 n.17 (D. Mass. 2025) (citing *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)). Moreover, the community group chats can shed little light on the Rule 23(a) factors, including commonality and typicality—especially as compared to Defendants' own records.

---

[8] Defendants suggest at various points that Plaintiffs have proffered insufficient evidence of a DHS policy or practice, but that conflates the merits of this case with the discovery privilege.

[9] It is worth noting that Defendants have not actually requested communications about third-party encounters with DHS agents.

[10] Defendants misstate the record with respect to how Plaintiff Hilton came to be present at the Home Depot when they say she "followed ICE." Def. Br. 10; *see* ECF No. 3-1, ¶ 3 (Hilton decl. explaining that she learned of the ICE presence via a Signal chat). And there is no factual basis for "presuming" that community groups were taking steps to "coordinate disruption."

Defendants' final argument is that forgone opportunities to observe are relevant to Plaintiffs' ability to seek prospective relief. But Defendants' burden is to show a "compelling need" for the documents, not a modicum of relevance. As Plaintiffs explained, these documents have only limited relevance to both the merits of their retaliation claims and their standing to seek prospective relief. The chill caused by Defendants' actions is only one basis for establishing standing; forgone opportunities to observe are only one way to show chill; and, in any event, the documents at issue do not necessarily establish forgone opportunities. ECF No. 69, at 7–8.

Instead, consistent with Defendants' (and DOJ's) continued attempt to demonize coordinated or collective dissent,[11] Defendants all but admit that what they really want is to conduct a fishing expedition that may or may not even relate to this case.[12]

Finally, Defendants' bald assertion that they cannot obtain relevant information through a less restrictive alternative defies credulity. A combination of federal agents' observations and the records they created are among the best evidence of how Plaintiffs and other observers behaved during relevant encounters, and whether and why the agents collected and maintained observers' personal information.

Defendants have no need for the documents and information they seek, let alone a compelling one, to outweigh the damage disclosure will do to Mainers' associational rights.

---

[11] In response to a reporter's question about this very dispute, a representative of DHS said, without providing any real evidence, "The First Amendment does not prevent routine discovery into chats that are used to impede and harm federal law enforcement," and that DHS officers are experiencing "coordinated campaigns of violence" . . ." Maddy Varner, *DHS Wants Protestors' Signal Group Chats*, WIRED (Aug. 5, 2026), https://tinyurl.com/25477yh5.

[12] For example, the government questioned Plaintiff Hilton about third party activities she had no involvement in, Hilton Dep. 192:1–194:15; questioned Plaintiff Williams about her "activism or advocacy" unrelated to this case, Williams Dep. 22:22–25; and questioned all Plaintiffs about their attendance at protests dating back years. (Defendants vaguely take issue with Plaintiffs' refusal to answer questions about protests, Def. Br. 7, but do not explain how that information is relevant and, in any event, have not properly raised the issue with the court.)

Dated: August 13, 2026

Respectfully submitted,

*/s/ Genevieve Nadeau*

Genevieve Nadeau*
Kenneth Parreno*
**Protect Democracy Project**
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
genevieve.nadeau@protectdemocracy.org
kenneth.parreno@protectdemocracy.org

JoAnna Suriani*
Janine M. Lopez*
Ori Lev*
F. Elias Boujaoude*
**Protect Democracy Project**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
(202) 579-4582
joanna.suriani@protectdemocracy.org
janine.lopez@protectdemocracy.org
ori.lev@protectdemocracy.org
elias.boujaoude@protectdemocracy.org

Jessica Marsden*
**Protect Democracy Project**
101 Glen Lennox, Suite 300
Chapel Hill, NC 27517
(202) 579-4582
jess.marsden@protectdemocracy.org

Melissa A. Hewey
David M. Kallin
**Drummond Woodsum**
84 Marginal Way, Suite 600
Portland, ME 04101
(207) 253-0528
mhewey@dwmlaw.com
dkallin@dwmlaw.com

Karen L. Dunn*
Jeannie S. Rhee*
L. Rush Atkinson*

Yotam Barkai*
John Paredes*
Benjamin J. Cabranes*
Tyler T. Mikulis*
**Dunn Isaacson Rhee LLP**
401 9th Street, NW
Washington, DC 20004
(202) 240-2900
kdunn@dirllp.com
jrhee@dirllp.com
ratkinson@dirllp.com
ybarkai@dirllp.com
jparedes@dirllp.com
bcabranes@dirllp.com
tmikulis@dirllp.com

**Pro hac vice*