UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ELINOR HILTON, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 2:26-cv-00092-JAW |
| | ) | |
| TODD LYONS, Acting Director, | ) | |
| U.S. Immigration and Customs | ) | |
| Enforcement, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON DISCOVERY ISSUES**

The Court has conducted multiple conferences with the parties to discuss Plaintiffs' assertion of the First Amendment privilege in response to Defendants' discovery requests. During the most recent conference on September 2, 2026, the Court discussed the scope of the privilege as it applies to the issues raised by the parties' discovery dispute. In this order, the Court reiterates its analysis and rules on the privilege issue.

During the September 2 conference, the Court also heard and considered the parties' arguments regarding Plaintiffs' request to disclose to third party potential witnesses (the witnesses) certain documents that Defendants produced in discovery and designated as "confidential" in accordance with the confidentiality order entered in this case. The documents are records prepared by a United States Immigration and Customs Enforcement (ICE) agent related to the witnesses' monitoring of ICE agents' activity in January 2026. Plaintiffs seek to disclose the documents to the witnesses when Plaintiffs speak with them

regarding their possible participation in the case as witnesses in connection with Plaintiffs' request for a preliminary injunction. Defendants contend that its "confidential" designation, which it maintains was appropriate because the documents reflect law enforcement investigative efforts, precludes Plaintiffs from sharing the documents. The Court addresses this issue below.

## DISCUSSION

A. First Amendment Privilege

During discovery, Defendants requested information regarding a social media chat group or groups to which Plaintiffs belong to monitor ICE activity. Citing the First Amendment privilege, Plaintiffs withheld approximately seventy documents, many of which evidently consist of multiple pages. Defendants argue that the requested information is not privileged and, if privileged, is discoverable because Defendants have demonstrated a compelling need for the information.

The First Amendment protects against "compelling a private organization to reveal the identities of its members where such disclosure will result in the harassment of existing members and the discouragement of new members can constitute a violation of the right to freedom of association." *United States v. Comley*, 890 F.2d 539, 543 (1st Cir. 1989). The applicability of the privilege is determined as follows:

> The party asserting the privilege must demonstrate a *prima facie* showing of arguable first amendment infringement. This *prima facie* showing requires [that party] to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights.

> If [that party] can make the necessary *prima facie* showing, the evidentiary burden will then shift to the government to demonstrate that the information sought through the discovery is rationally related to a compelling governmental interest and the least restrictive means of obtaining the desired information.

*Nat'l Org. for Marriage v. McKee*, 723 F. Supp.2d 236, 240 (D. Me. 2010) (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010)). "The courts have long recognized the sensitivity of information related to such activities and consequently have ruled that the following information is protected by the First Amendment: membership and volunteer lists, contributor lists, and past political activities of plaintiffs and or those persons with whom they have been affiliated." *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 2 (D.D.C. 2002).

As the Court explained during the recent conference, Plaintiffs have established a prima facie case that disclosure of the names of the individuals involved in the chat groups would likely have a chilling effect on the individuals' exercise of their First Amendment rights. The conduct alleged in this case is sufficient to generate legitimate concerns among the groups' members if their identities were revealed. Defendants have failed to demonstrate that the names of the group members are related to a compelling governmental interest in this case. Given the relatively narrow issues that are subject of this expedited discovery process in anticipation of a preliminary injunction hearing, the Court discerns no compelling reason for Defendants to know the identity of the group members.

Plaintiffs have also established a prima facie case that the privilege applies to the substance of the communications to the extent the communications reflect the political activities of Plaintiffs and other group members. The communications include discussion

regarding group members' efforts to monitor the location and activity of ICE agents, which conduct can reasonably be characterized as political activity. The Court is satisfied that disclosure could have a chilling effect on the willingness of group members to communicate about and to gather and protest governmental activity.

Defendants, however, have persuasively argued that some of the substance of the communications is likely related to a compelling governmental interest—to learn whether there is information that might support or undermine Plaintiffs' contention in this case that the alleged conduct of ICE agents in January 2026 was pursuant to an agency policy and whether the conduct has prevented Plaintiffs from exercising their First Amendment rights after the alleged January 2026 incidents. Without reviewing the documents, the Court cannot determine whether the documents include such information. The Court will conduct an in camera review of the documents to make that determination.

B. Records Prepared by ICE Agent

The confidentiality order is designed to facilitate discovery without the need for the parties to litigate before discovery is produced whether further disclosure of the produced information should be permitted. Under the terms of the confidentiality order, the parties cannot share information designated as confidential with "witnesses and others" except "by consent of the affected parties." (Heightened Confidentiality Order ¶ 9, ECF No. 28.) A party's "confidential" designation, however, does not control whether the information can be introduced as evidence in the case. The confidentiality order provides: "Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial." (*Id.*

¶ 19.) The confidentiality order, therefore, is not an impediment to the requested disclosure if the Court determines disclosure is warranted.

In addition to the "confidential" designation as a basis for non-disclosure, Defendants evidently contend that the information is within the law enforcement privilege. The First Circuit has "recognized a privilege for law enforcement activities regarding confidential government surveillance information to confidential informants to law enforcement techniques and procedures. The underlying rationale being that law enforcement functions and operations will not be effective if interference is prevalent. Having recognized that the law enforcement privilege is not absolute, it may be overcome by a sufficient showing of authentic necessity that courts determine on a case-by-case basis." *Gulluni v. Levy*, 85 F.4th 76, 85 (1st Cir. 2023) (internal quotation marks and citations omitted).

While the records include information that could conceivably be construed as evidence of law enforcement techniques and procedures, in the Court's view, certain information is not necessarily within the privilege. After review of the records, because the form of the record itself and some of the data in the record could reveal law enforcement techniques and procedures, and because the Court is not convinced there is an authentic necessity to disclose the form and all the data, Plaintiffs cannot share the documents with the witnesses. Because the witnesses will apparently be asked to provide sworn testimony regarding the subject matter of some information in the records, and because the Court is not persuaded that disclosure of the existence of the reports and some of the substance of the reports would reveal law enforcement techniques and procedures, fundamental fairness

suggests that the witnesses learn that their activity was documented and how their conduct was characterized. The Court, therefore, will authorize Plaintiffs to share certain substantive information with the witnesses.

## CONCLUSION

For the reasons explained above and stated on the record during the September 2, 2026, conference, the Court finds and orders:

1. By noon on September 4, 2026, Plaintiffs shall submit for the Court's in camera review copies of the seventy documents withheld from discovery based on the First Amendment privilege.
2. Plaintiffs may disclose orally to each witness (a) the fact that an ICE agent prepared a report based on the witness's monitoring activity, and (b) the information contained in the "remarks" section of the witness's record, provided that the witness signs the "Acknowledgment and Agreement to be Bound" form contemplated by the confidentiality order.

## NOTICE

Any objections to this order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 3rd day of September, 2026.