**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

ELINOR HILTON, COLLEEN FAGAN, POLYXENIA PANTOS, and CARLYN WILLIAMS on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MARKWAYNE MULLIN, Secretary of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JOHN A. CONDON, Acting Executive Director, Homeland Security Investigations; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection; MICHAEL BANKS, Chief, U.S. Border Patrol; THE U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; HOMELAND SECURITY INVESTIGATIONS; U.S. CUSTOMS AND BORDER PROTECTION; U.S. BORDER PATROL; UNIDENTIFIED FEDERAL AGENCIES; and UNIDENTIFIED FEDERAL AGENTS,

Defendants.

Case No. 2:26-cv-00092-JAW

**[CORRECTED] DEFENDANTS' LIMITED OBJECTION TO THE MAGISTRATE JUDGE'S ORDER REGARDING PLAINTIFFS' INVOCATION OF APPLICATION OF THE FIRST AMENDMENT TO WITHHOLD RELEVANT DISCOVERY**

Some Plaintiffs participated in Signal chats in which participants discussed encounters with law enforcement and tactics to track law enforcement actively conducting enforcement operations. Plaintiffs asked the Magistrate Judge to shield those documents as well as any inquiry into the Signal chats' purpose and substance from discovery.

Defendants file this limited objection to the Magistrate Judge's order on discovery issues dated September 3, 2026, *see* ECF No. 95 ("Sept. 3 Order"), and order after *in camera* review dated September 8, 2026, *see* ECF No. 99 ("Sept. 8 Order"), on the issue of whether the substance of communications in which Plaintiffs participated is protected from disclosure under the First Amendment. *See* Sept. 3 Order at 3.[1] The Magistrate Judge erred in finding that the substance of the communications is protected from disclosure by the First Amendment when First Circuit precedent indicates the opposite is true. This Court should overrule the Magistrate Judge's order and instead find that Plaintiffs have failed to establish that the substance of their communications should be protected under the First Circuit's decision in *United States v. Comley*, 890 F.2d 539 (1st Cir. 1989), and other related cases. Plaintiffs acknowledge there is no "case exactly like ours," July 21, 2026 Hr'g Tr. 9:13-14, and this Court should not be the first to expand the First Amendment well past the bounds given by the Supreme Court and the First Circuit.

**BACKGROUND**

Plaintiffs filed this action on the basis that Defendants violated the First Amendment rights of them and others in a proposed class by allegedly "collect[ing] and

[1] Although Defendants contested that the names of the Signal chats' participants are also not protected and still do not believe that those names should be withheld, *see* ECF No. 76 at 6-7, Defendants do not seek review of the Magistrate Judge's finding that the participants' names may be withheld. *See* Sept. 3 Order at 3.

track[ing]" information because of Plaintiffs' exercise of their First Amendment activity. *See* Am. Compl. (ECF No. 29) ¶ 6. In discovery, Defendants learned that at least some of the Plaintiffs participated in Signal chats called "rapid response" group chats in which participants collected and tracked ICE vehicle information and movements [redacted] *See* Ex. 1 (Pantos Dep.) 30:14-17; *see* Ex. 2 (Hilton Dep.) 40:20-23 (same). Participants of those Signal chats were [redacted], Hilton Dep. 35:23-38:9; [redacted] *see, e.g.*, Ex. 3 (Plaintiffs-000219); Ex. 4 (Plaintiffs-000239); Ex. 5 (Plaintiffs-000222); Ex. 6 (Plaintiffs-000214); [redacted] Hilton Dep. 182:16-18; [redacted] *id.* 187:6-13; and [redacted]. *Id.* 72:5-73:3; Ex. 7 (Whistle Training). Possible participants on these Signal chats were also [redacted]. *See* Hilton Dep. 192:1-193:10.

But Defendants could not further inquire into the Signal chats' contents because Plaintiffs' counsel instructed the Plaintiffs to not answer questions about "any of the sort of operations or internal communications of the group." Ex. 8 (Williams Dep.) 40:18-20; *see also* Pantos Dep. 29:25-33:3; Hilton Dep. 40:24-42:19, 43:22-25, 49:4-14, 63:13-64:3, 92:20-25. Likewise, Plaintiffs prevented Defendants from evaluating written discovery about these Signal chats, withholding 71 documents on the basis of the First Amendment, *see* Ex. 9 (Aug. 3, 2026 Privilege Log), and significantly redacting 96 of the 165 documents that they did produce. *See* Ex. 10 (July 13, 2026 Privilege Log). Because of those redactions, Plaintiffs could not recall some events. *See, e.g.*, Hilton Dep. 136:4-10, 139:21-

140:2; Williams Dep. 61:1-10, 63:21-23.[2] Defendants also were not permitted to ask questions about the group chats' names, *see* Ex. 14 (Fagan Dep.) 88:16-25; "any sort of operations . . . of the group," Williams Dep. 40:10-22; *see id.* 48:9-15 (objecting to whether "reported sighting[s]" were a subject of the chats); the number of people in the chats, *id.* 45:16-24; whether those chats were coordinated locally or nationally or by some political group, *id.* 46:4-47:13; and whether individuals that Plaintiffs knew were members. Hilton Dep. 194:11-16. Plaintiffs also did not produce any documents in response to a request for production or respond to an interrogatory requesting more information about the databases that Plaintiffs created or participated in relating to the collection, maintenance, and dissemination of information of federal employees on the basis of the First Amendment. Ex. 15 (Aug. 28, 2026 Interrogatory Response #9), 16 (Aug. 28, 2026 RFP Response #13).[3]

On September 3, Magistrate Judge Nivison issued an order finding that the First Amendment protects both the names of the participants of the Signal chats as well as the chats' substance. Sept. 3 Order at 3-4. The order is short. It first recites the standard for when First Amendment protection applies when "compelling a private organization to reveal *the identities of its members* where such disclosure will result in the harassment of existing members and the discouragement of new members can constitute a violation of

[2] Examples of redacted documents used in those depositions include what is attached as Exhibits 11 (Plaintiffs-000211), 12 (Plaintiffs-000306) and 13 (Plaintiffs-000329).

[3] Defendants do not believe that anything that is attached to or quoted in this Motion should be filed under seal, but many of the documents were produced by Plaintiffs with a "confidential" or "Attorney's Eyes Only" designation, including the entirety of their depositions and their privilege logs of withheld and redacted documents. *See* Exs. 9 (Aug. 3, 2026 Privilege Log) & 10 (July 13, 2026 Privilege Log). And the only version of Plaintiffs' Preliminary Injunction Motion is currently under seal. Thus, Defendants are simultaneously moving to seal this information, even though Defendants do not believe it warrants sealing.

the right to freedom of association," Sept. 3 Order at 2 (emphasis added) (quoting *Comley*, 890 F.2d at 543), and then states "that disclosure of the names of the individuals involved in the chat groups would likely have a chilling effect." *Id.* at 3. But the order then pivots to say that the First Amendment "applies to the substance of the communications to the extent the communications reflect the political activities of Plaintiffs and other group members" without explanation. *Id.* at 3-4. The order also states that Defendants established that "some of the substance of the communications is likely related to a compelling governmental interest," requiring *in camera* review of those documents. *Id.* at 4. On September 8, Magistrate Judge Nivison ordered production of two pages of the withheld documents and did not order Plaintiffs to remove any redactions. *See generally* Sept. 8 Order.

## ARGUMENT

The First Amendment protects against "compelling a private organization to reveal *the identities of its members* where such disclosure will result in the harassment of existing members and the discouragement of new members can constitute a violation of the right to freedom of association." *Comley*, 890 F.2d at 543 (emphasis added). That right exists to allow effective speech through the "combining [of] one's voice with the voices of others" and to prevent "essentially silenc[ing] views that the First Amendment is intended to protect." *Rumsfeld v. FAIR*, 547 U.S. 47, 68 (2006) (citation omitted).

To determine whether First Amendment protection applies, the Court engages in a two-part analysis. *First*, the party seeking protection must "make the requisite *prima facie* showing of arguable First Amendment infringement," *Nat'l Org. for Marriage v. McKee*, 723 F. Supp. 2d 236, 240 (D. Me. 2010)—which is that "the disclosure requirement will result in harassment of current members, a decline in new members, or other chilling of

associational rights," *Comley*, 890 F.2d at 543—based on "objective and articulable facts, [going] beyond broad allegations or subjective fears." *McKee*, 723 F. Supp. 2d at 242. *Second*, if the plaintiff makes that showing, the burden shifts to the government to show (i) "a compelling need for the material sought" and (ii) that "no significantly less restrictive alternative" to obtain the information exists. *Comley*, 890 F.2d at 544.

## I. The First Amendment Does Not Apply to the Substance of Plaintiffs' Communications.

Magistrate Judge Nivison stated that the substance of Plaintiffs' communications on Signal that are relevant to Plaintiffs' claims and Defendants' defenses are protected by the First Amendment. That order is mistaken for at least three reasons.

***First***, the order is mistaken because the best reading of First Circuit and Supreme Court case law is that the substance of communications cannot be withheld on the basis of the First Amendment. Instead, the case law reveals that, at most, the individuals' names may be protected. The Supreme Court has found that the government cannot require the names of individuals who are in or associated with certain organizations to be disclosed by subpoena. *See, e.g.*, *First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114, 1126 (2026) (a "demand for private donor information injures the group's First Amendment associational rights"). But the Supreme Court has not recognized any right to prevent disclosure of communications' substance. And the First Circuit stated that it had "reservations about the strength of the first amendment concerns implicated by the challenged subpoena" because the subpoena "d[id] not directly require the disclosure of the identities of [the defendant's] associates or informants," instead relating to "discover[y] [of] the *substance* of the information." *Comley*, 890 F.2d at 544 (emphasis added).

To be sure, some out-of-circuit case law suggests that some internal information can be protected from disclosure because "the right to exchange ideas and formulate strategy and messages . . . in private" is "[i]mplicit in the right to associate with others." *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010). But those cases concern internal deliberations to decide how an association wishes to speak as a group. *See id.*; *see also City of Greenville v. Syngenta Crop Prot., Inc.*, No. 11-MC-10, 2011 WL 5118601, at *6 (C.D. Ill. Oct. 27, 2011) ("The constitutional concern is to protect the First Amendment rights of individuals to associate with each other and to speak as a group."); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011) ("[S]ome collective efforts to express ideas will only be undertaken if they can be undertaken in private."). Those cases do not extend to what Plaintiffs advocate for here.

And the privilege cannot be used as both a sword and shield and is weaker in civil litigation than when there is "compelled disclosure." *See NAACP v. Patterson*, 357 U.S. 449, 462 (1958). In *McKee*, Judge Rich recognized this distinction by noting that the State could seek records "for purposes of defending against a suit challenging the constitutionality of Maine laws, not for purposes of a criminal investigation." 723 F. Supp. 2d at 243. Plaintiffs are not resisting a government investigation; they chose to bring this lawsuit to challenge the constitutionality of Defendants' conduct and thereby placed their own activities and Defendants' responses to them at issue. Plaintiffs assert they were wronged by the government but seek to make relevant information off limits. They "cannot have it both ways." *Anderson v. Nixon*, 444 F. Supp. 1195, 1199 (D.D.C. 1978).

***Second***, it is far from clear that the types of interactions contained within the group messages are protected by the First Amendment. Plaintiffs assert that *all* their activities—

regardless of whether they interfere with ICE operations—are protected by the First Amendment. *See* ECF No. 101-1 at 13, 24-25 (arguing that [redacted]). Those actions include [redacted] *see, e.g.*, Ex. 3 (Plaintiffs-000219); Ex. 4 (Plaintiffs-000239); Ex. 5 (Plaintiffs-000222); Ex. 6 (Plaintiffs-000214); [redacted], Hilton Dep. 182:16-18; [redacted], *id.* 187:6-13; [redacted], *id.* 72:5-73:3, , 173:5-7; Fagan Dep. 28:3-5; Ex. 7 (Whistle Training); and [redacted]. *See* Hilton Dep. 192:1-193:10.

But the First Circuit has not extended the First Amendment anywhere near that far. The First Circuit has held that the First Amendment protects an individual's right to videotape police officers observed while "walking past" them, *see Glik v. Cunniffe*, 655 F.3d 78, 79-80 (1st Cir. 2011), and to film a traffic stop carried out in public. *See Gericke v. Begin*, 753 F.3d 1, 8 (1st Cir. 2014). Additionally, it held that a statute's "outright ban" on secretly recording law enforcement officers was "not narrowly tailored to further the government's important interest in preventing interference with police doing their jobs and thereby protecting the public." *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 837 (1st Cir. 2020). But in those decisions, the First Circuit has made clear that the First Amendment has limits, most notably, that officers may issue "reasonable orders to maintain safety and control" that may have incidental effects on filming, or may directly order a person to stop recording "if the officer can reasonably conclude that the filming

itself is interfering, or is about to interfere, with his duties." *Gericke*, 753 F.3d at 8; *accord Glik*, 655 F.3d at 84 (noting that the "peaceful recording of an arrest in a public space" was protected because it "does not interfere with the police officers' performance of their duties"). *Gericke*, *Rollins*, and *Glik* address activities far different from coordinating persons to follow law enforcement locations and to move to locations where federal law enforcement is present to disturb law enforcement operations.

***Third***, Plaintiffs' Doe declarants express fear regarding the disclosure of their names because of alleged fears of being added to a watchlist or investigated. *See* Doe 1 Decl. ¶¶ 10-12, ECF No. 75-1; Doe 2 Decl. ¶¶ 10-12, ECF No. 75-2; Doe 3 Decl. ¶¶ 10-12, ECF No. 75-3. But they do not provide any "objective and articulable facts, [going] beyond broad allegations or subjective fears" that explain why releasing the substance—*without their names*—would somehow chill associational rights. *McKee*, 723 F. Supp. 2d at 242; *see Comley*, 890 F.2d at 543 (describing the moving party's burden as showing that "the disclosure requirement will result in harassment of current members, a decline in new members, or other chilling of associational rights"). Likewise, Plaintiff Hilton's declaration does not explain how associational rights will be chilled by producing the substance of the chats, as she merely provides "broad allegations or subjective fears," *see McKee*, 723 F. Supp. 2d at 242, that making those chats public could lead to violence by other people. Hilton Decl. ¶ 8, ECF No. 75. But that is a non-sequitur as the documents could be produced under the protective order, negating any concern about proposed chilling effects because the feared repercussions will not occur. *Cf. McKee*, 723 F. Supp. 2d at 241.

## II. Even if Plaintiffs Established a First Amendment Burden, Defendants Have a Compelling Need for the Information and No Other Means of Obtaining It

The Court need not address whether Defendants have a compelling need for the

information because Plaintiffs have failed to make a *prima facie* showing. But even if the Plaintiffs made such a showing, Defendants have demonstrated a "compelling need for the material sought and that there is no significantly less restrictive alternative." *McKee*, 723 F. Supp. 2d at 242, *aff'd*, *In re Nat'l Org. for Marriage*, No. 10-1350, 2010 WL 11816264, at *1 (1st Cir. June 7, 2010). Magistrate Judge Nivison recognized that but chose to review the documents *in camera* and to assess the documents' relevance rather than allow Defendants to review them. *See* Sept. 3 Order at 4. But he ultimately ordered production of only two pages. *See generally* Sept. 8 Order. Those orders were erroneous. Plaintiffs have accused Defendants of unconstitutional conduct and seek prospective relief. Defendants have a compelling interest in obtaining evidence necessary to test Plaintiffs' allegations and defend against that relief, and this discovery cannot be obtained by other means.

***The Existence of a "Policy".*** The key question in this case is whether Defendants have a policy of collecting either telling people that they will be put on a database or and uploading Mainers' biometric data based on First Amendment activity. *See* Am. Compl. ¶¶ 31-32. Defendants deny that such a policy exists, and Plaintiffs point only to their own experiences as evidence of the alleged policy. *See* Hilton Dep. 159:12-19 ([redacted]); Pantos Dep. 78:2-6 ([redacted]); *see* PI Motion at 15-16 (discussing the same). Defendants are entitled to know whether Plaintiffs have any evidence to support their claims because Defendants have not seen anything.

***Tracking Federal Law Enforcement.*** Another key issue is whether Defendants' officers acted reasonably by checking license plates or investigating individuals who

followed them. For example, Plaintiff Hilton and others followed ICE to an area behind a Home Depot that was not easily observed. *See* Hilton Dep. 65:16-68:16. Hilton admitted that she and others on these Signal chats were [redacted], *see id.* 39:2-20, 83:8-22, presumably to alert others to ICE's presence and coordinate disruptions. Whether Defendants' officers acted reasonably will be part of the analysis of any individual encounter.

***Plaintiffs' Alleged Ongoing Injury.*** Plaintiffs seek prospective injunctive relief and rely on an alleged continuing chill. Indeed, the entire premise of Plaintiffs' alleged injury is that their First Amendment rights were, in fact, chilled. Plaintiffs have put this alleged chill squarely at issue and the substance of the communications at issue is essential to allow the Defendants, and the Court, to test that central premise of their claim. Having used their alleged First Amendment chill as a sword, it is unfair to use the First Amendment as a shield to deny Defendants the opportunity to see if they were in fact chilled. If the substance of the communications show that Plaintiffs were not, in fact, chilled, that is relevant and likely disposes of their claim. In sum, evidence concerning whether and to what extent Plaintiffs continued that activity after the challenged events is relevant to the existence, extent, and cause of their prospective injury, and Plaintiffs alone possess that information. Defendants should thus be granted access to that information.

## CONCLUSION

The Court should order disclosure of the substance Plaintiffs' withheld documents, all redactions relating to the substance of information withheld based on the First Amendment to be removed, and allow Defendants to question Plaintiffs about the Signal chats' contents in future depositions.

Dated: September 18, 2026 Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER HAAS
Branch Director

*/s/ J. Stephen Tagert*
NATALIE M. VILLALON
J. STEPHEN TAGERT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 305-5486
Natalie.M.Villalon@usdoj.gov
Stephen.Tagert@usdoj.gov

ANDREW B. BENSON
United States Attorney

JOHN G. OSBORN
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
John.Osborn2@usdoj.gov

*Counsel for Defendants*