**In the Matter Of:**

*Elinor Hilton and Colleen Fagan vs*

*Kristi Noem, et al.*

[redacted]

*August 18, 2026*

LEXITAS™

Q. You referenced trainings about the Fourth and First Amendment. Is there a specific training covering the contents of this memorandum?

MR. TAGERT: Objection.

THE WITNESS: That -- that would be for officers. Officers are trained -- they will get trained on Fourth Amendment. It's titled Fourth Amendment, but also includes First Amendment.

So they will get trained on that a minimum of once a year as ERO officers, as a minimum. Some offices will do it more, up to once a quarter.

Agents will get this in the academy. However, they are always dealing with the U.S. Attorney's Office on criminal prosecutions and are always working with Fourth Amendment and First Amendment during their

prosecutions, to make sure you
are not violating them.

So the training for an
agent is -- is not needed as
routinely since they are
executing it on a routine basis.

BY MS. LOPEZ:

Q. Okay. Just so I'm clear. You referenced the ERO training for officers on the First and Fourth Amendments.

Do those trainings specifically train officers about the policies set forth in this memorandum?

A. They train them on Fourth Amendment. It is given by our Office of Principal Legal Advisor, our attorneys.

So our attorneys do what they know to be legally sufficient and adequate to our officers, that they would need to satisfy the requirements of this memo, whether they read the memo or not.

After all, the memo was

then again, that would then go right back to impeding a federal officer.

If they are a foot from their face, not allowing them to move, blocking them at every -- at every -- at every turn, is that officer -- are those officers or agents -- are they on their way to execute a final order?

So it could be. Again, it depends on the -- it depends on the factors surrounding it.

The thing it always comes back to is pretty, pretty basic, is everybody's First Amendment rights are protected. They can do it. They can execute how they see fit, until it crosses the line that they are impeding or interfering with a federal law enforcement operation or enforcement action or are

threatening. At that point, it crosses the line and is no longer protected activity.

Before that line, it's protected activity.

BY MS. LOPEZ:

Q. And is the department's position that there are no categories for which a bright line rule can be drawn?

Are there any categories that categorically fall on the side of protected activity or unprotected activity?

MR. TAGERT: Objection. Vague. Speculation. Legal conclusion.

THE WITNESS: Yeah. What do you mean by "bright line"?

That's -- that's -- my interpretation of that could be different than yours. Please -- please expand on that.

BY MS. LOPEZ:

BY MS. LOPEZ:

Q. I understand. But from the perspective of the DHS personnel, who is charged with complying with this memo.

A. Yeah.

Q. It says they cannot collect information about First Amendment activity.

Does that include DHS personnel taking photos of people who are engaged in First Amendment activity?

MR. TAGERT: Objection. Vague.

THE WITNESS: Yeah. They "shall not collect, maintain in DHS systems, or use" in any protected by the First Amendment.

"Unless that information is relevant to a criminal, civil, or administrative activity or relating to a law DHS enforces or administers. In addition, DHS personnel shall

not pursue by question, research, or other means, information related to how an individual exercises their First Amendment rights."

So, yes, we wouldn't collect that or keep it. Or we wouldn't collect it unless it is pertaining to a relevant criminal, civil, or administrative activity to law enforcement -- to DHS law enforcement, which would include interfering with a law enforcement operation, impeding law enforcement, or threats to law enforcement.

BY MS. LOPEZ:

Q. Okay. Looking at the bottom of the third page, there's a reference -- the final paragraph -- to the acting secretary tasking CRCL and the DHS Privacy Office "to review existing guidance and develop new

I thought I saw the one --
I can't find it at this point in time.

BY MS. LOPEZ:

Q. To the extent you are thinking of policies that discuss collection of information about First Amendment activity, is it fair to say you only have in mind policies that are in your binder of materials you've reviewed in preparation for today?

MR. TAGERT: Objection.

THE WITNESS:
Clarification on the policies, that they are not defined on how to collect people executing their First Amendment rights.
It defines that they will not collect on people executing their First Amendment rights, with the exception if the person exercising their First Amendment rights crosses the line and infringes or impedes a federal

operation, threatens a federal officer.

BY MS. LOPEZ:

Q. With that clarification --

A. So yes.

Q. -- fair to say you are only --

A. So yes.

Q. -- thinking of the policies that you have in your binder in front of you?

A. Yes. Unless I'm -- unless I'm reminded of another policy that has slipped my mind.

Q. Does the department have a position on who counts as an agitator?

MR. TAGERT: Objection to the form of the question.

THE WITNESS: As an agitator? In what context?

BY MS. LOPEZ:

Q. I'm asking you. Is that a term you've used before?

MR. TAGERT: Objection.

execution of the law enforcement operation or the law enforcement duties or threatening a law enforcement, where the person deemed -- that the law enforcement officer or agent deemed it appropriate to interact with that individual.

BY MS. LOPEZ:

Q. Has the department explained the meaning of the term "agitator" to agents operating in the field?

MR. TAGERT: Objection. Speculation. Vague. Outside the scope.

THE WITNESS: The need for explanation of agitator is not necessary. Since, if the person is following the First Amendment -- utilizing their First Amendment-protected rights, we don't interact with them.

So an agitator, if they crossed the line, would be engaged by law enforcement if they were impeding or -- or interfering with lawful -- law enforcement activity.

BY MS. LOPEZ:

Q. Is someone who stands 10 feet away from an operation and films an operation as it's taking place an agitator?

The only answers here to my question are, "Yes," "No," or "It depends."

Do you have an understanding of whether a person who stands and films an agitator -- films an operation counts as an agitator?

MR. TAGERT: Objection. Speculation. Vague. Outside the scope. Argumentative.

THE WITNESS: What are my three options for answers?

BY MS. LOPEZ:

Q. "Yes," "No," or "It depends."

A. It depends.

Q. Has the department ever instructed agents to collect information about agitators?

MR. TAGERT: Objection. Vague. Speculation. Scope.

THE WITNESS: Well, based on what you handed me as an -- as an exhibit, it does reference agitators.

But, again, somebody that is classified as a agitator, which is not executing their -- has stepped beyond the line of executing their First Amendment right and has, in some way, shape, or form, interfered with the law enforcement operation and how he is performing it.

BY MS. LOPEZ:

Q. And what's the purpose of obtaining information on agitators?

they've gotten a -- if it is a -- if it's on a phone, has it been -- it goes back to the is it a PDF. Is it a Java. Did somebody write a script, write a Python script, to actually create this?

So it could be -- it could be outside of many different policies with as broad as it is.

However, it still goes back to, and doesn't change, that if the protestors are executing their First Amendment rights and they don't -- they don't cross that line to impede a federal law enforcement operation, or any law enforcement operation, to that matter, that we are enforcing, and they don't threaten a law enforcement officer, then...

BY MS. LOPEZ:

Q. The position of the

Vague.

THE WITNESS: Can you rephrase that, please.

BY MS. LOPEZ:

Q. Were agents, at any point, advised that it was a good practice to collect information, such as photos or license plate information, about members of the public who were protesting or recording their operations?

MR. TAGERT: Objection. Vague.

THE WITNESS: Agents were instructed to let people executing their First Amendment rights execute their First Amendment rights.

Do not engage with the protestors unless they cross the line and -- and they are impeding a law enforcement operation or threatening a law enforcement officer, which would be a law that we enforce.

physically touch the officers. Another protestor, however, shoves an ICE officer attempting to clear the entrance."

Under that case study is the question, "Which actions are protected under the First Amendment?"

We don't have the department's speaker notes or other information about the responses that were presented to agents.

Do you, sitting here today, know what the department's position on which activities are protected under the First Amendment here is?

MR. TAGERT: Objection. Speculation. Scope.

THE WITNESS: Yeah. The department's -- what's protected under the First Amendment is anybody that is executing their First Amendment rights and not impeding a law enforcement officer during the execution of

his duties or threatening a law enforcement officer or -- yeah.
Go ahead.
BY MS. LOPEZ:
Q. On the facts presented here, do you have an understanding of at what point the conduct violates 18 U.S. Code 111?
MR. TAGERT: Same objections.
THE WITNESS: What you're looking at is a case study, and what you're asking for is discussion points.
So when they do a case study like this, they started off with a baseline, and they keep asking and changing the scenario. Similar to what you were doing earlier. They keep changing the scenario to see how everybody interacts and see what it is.
So this right here would

CERTIFICATE

I HEREBY CERTIFY that the witness was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

It was requested before completion of the deposition that the witness, [redacted], have the opportunity to read and sign the deposition transcript.

MICHELLE L. RIDGWAY,
A Registered Professional Reporter, Certified Shorthand Reporter, Certified Realtime Reporter, Certified Court Reporter, and Notary Public
Dated: August 20, 2026

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)