**In the Matter Of:**

*ELINOR HILTON, et al. V.*

*MARKWAYNE MULLIN*

---

*OFFICER* [redacted]

*August 11, 2026*

---

LEXITAS™

Q. Do you recall when you had that conversation?
A. It was shortly after I saw the video that [redacted] sent me.
Q. What discipline did Officer [redacted] receive as a result of not watching what he said?
A. I don't know if it would be considered discipline, but he received verbal counseling from myself.
Q. And is that the conversation that you just referenced? Is that the verbal counseling?
A. Yes.
Q. Was that one conversation you had with Officer [redacted] or multiple?
A. It was one conversation.
Q. And was it during -- while you were still in Maine?
A. Yeah. Yeah. It was last time saw him.
Q. So what instruction did you specifically give Officer [redacted]?
A. I don't recall.
Q. I think -- okay. Your testimony was

"to be more mindful."

A. Generally, that's what I said to him. I don't recall exact words.

Q. Yeah, I understand you're not -- you're not -- you're not recounting verbatim.

Sitting here today, what do you take "be more mindful" to mean? Like what message were you trying to get across?

MR. TAGERT: Objection. Speculation.

THE WITNESS: I believe I was just trying to tell him to watch what he says. He knows that he was. He explained to me that he was trying to be funny. The joke didn't land clearly. And I said just watch what you say.

BY MR. CABRANES:

Q. Are you aware of whether during Operation Catch of the Day other officers made similar statements to members of the public?

MR. TAGERT: Objection. Speculation.

THE WITNESS: I was made aware of

A. And the phone call was at what time?
Q. We believe it was at about 11:01 AM. It's UTC, 6:01 PM UTC. So.
A. What number am I looking at here?
Q. Number 26.
A. 26. Oh, UTC. Ah. Got you. I'm a pilot. I should know that.
So what time is that?
Q. You're putting me on the spot here. I think --
A. Should be four hours I think difference.
Q. And where were -- do you remember where you were on February 26th? Were you in --
A. I don't remember where I was last week. So no.
Q. After Operation Catch of the Day, did you return to Utah?
A. Yes.
Q. Did you go out on any other ICE operations or were you deployed on any other ICE operations outside of Utah in February?

MR. CABRANES: Okay. That's all. That's all the questions I have I think.

EXAMINATION

BY MR. TAGERT:

Q. Okay. So, thank you, Officer Reddish. I've got a few questions for you.

So if you'd return to -- well, first question: In Maine, other than Officer Young, did you know of any other ERO officer who said something about databases to protesters?

A. Were there any other.

Just the one we talked about. I think the agents say agents, but that was attorney-client privilege.

Q. And do you know of any other ERO officer who --

A. Oh, ERO.

Q. -- said something about a database to protesters?

A. No. No. No.

Q. Okay. So would you pull out Exhibit 14 for me. I'll let you do that. It's a policy dated

CERTIFICATE OF REPORTER

DISTRICT OF COLUMBIA )

I, Denise Dobner Vickery, Certified Realtime Reporter, Registered Merit Reporter and Notary Public, do hereby certify [redacted] was first duly sworn by me to testify to the truth; that the said deposition was recorded by me and thereafter reduced to printing under my direction; and that said deposition is a true transcript of my original stenographic notes.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and I am not financially interested in this action.

Denise Dobner Vickery

DENISE DOBNER VICKERY, CRR,RMR
Notary Public in and for the
District of Columbia

My Commission expires: March 14, 2028