**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| ELINOR HILTON, COLLEEN FAGAN, POLYXENIA PANTOS, and CARLYN WILLIAMS,<br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JOHN A. CONDON, Acting Executive Director, Homeland Security Investigations; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection; MICHAEL BANKS, Chief, U.S. Border Patrol; THE U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; HOMELAND SECURITY INVESTIGATIONS; U.S. CUSTOMS AND BORDER PROTECTION; U.S. BORDER PATROL; UNIDENTIFIED FEDERAL AGENCIES; and UNIDENTIFIED FEDERAL AGENTS,<br><br>Defendants. | Case No. 2:26-cv-00092-JAW |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION TO SEAL PRELIMINARY INJUNCTION DOCUMENTS (ECF 119) AND SUPPLEMENT TO DEFENDANTS' MOTION TO SEAL (ECF 137)**

Defendants seek to seal extensive information under the guise of agent safety (names) and protecting law enforcement sensitivity (other information). ECFs 119, 137. But much of the information Defendants seek to keep under seal is already in the public record. In any event, their proposed redactions are grossly overbroad and rest upon conclusory declarations that fail to provide the specific factual showing required to overcome the strong presumption of public access to judicial documents. Defendants' Motion to Seal should be denied.[1]

## I. Only "The Most Compelling Reasons" Can Justify Sealing.

"Judicial records" are "entitled to a common law presumption of access," and "only the most compelling reasons can justify" sealing. *United States v. Kravetz*, 706 F.2d 47, 56, 59 (1st Cir. 2013) (citation modified). This presumption is particularly strong in cases involving the government, where "the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Federal Trade Comm'n v. Standard Fin. Mgmt. ("FTC")*, 830 F.3d 404, 410 (1st Cir. 1987). Any sealing determination "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Id.* at 412 (citation modified).

Critically, the presumption "favors openness, and a court need make no finding . . . in order to make the proceedings and documents in a civil trial public. Instead, it is the party seeking to keep documents sealed who must make a showing sufficient to overcome the presumption of public access." *Nat'l Org. for Marriage v. McKee ("NOM")*, 649 F.3d 34, 71 (1st Cir. 2011). And where, as here, a case involves "matters of significant public concern[,] [t]he threshold showing required for [sealing] is correspondingly elevated." *FTC*, 830 F.3d at 410. Moreover, the "fact that a confidentiality order was in place during discovery has *no bearing*" on whether judicial records should be sealed. *Tourangeau v. Nappi Distributors*, 2022 WL 768688 (D. Me. March 14, 2022) (emphasis added).

[1] The documents at issue are attached to Defendants' Supplement (ECF 137), plus the Williams and Neff Declarations (ECF 105-2, 105-4) that Defendants omitted from their filing. Plaintiffs' proposed PII redactions, which are not disputed, are highlighted in yellow. Defendants' proposed redactions are indicated by boxes.

As discussed below, much of the information Defendants seek to seal is already on the public record. In such cases, there is no basis for sealing. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("[H]owever confidential it may have been beforehand, subsequent to publication it [i]s confidential no longer. . . . [A court] simply do[es] not have the power . . . to make what has thus become public private again.").[2]

Against this demanding legal backdrop, it is abundantly clear that Defendants' proposed redactions are grossly overbroad and their conclusory declarations are insufficient.

## II. Agent/Officer/Employee Names Should Not Be Redacted.

Defendants seek to redact the names of all federal agents, officers and employees, including those whose conduct is at the heart of this matter, ostensibly due to the risk of "doxing" if individuals' names were made public.[3] This argument fails on multiple grounds.

1. Defendants cite a single case in support of the redaction of employee names, but that case held only that "contact information" should be redacted, *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193, 1213 (N.D. Cal. 2020), and the documents filed on the public record in *Nightingale* reveal employee names, redacting only PII. Declaration of Ori Lev ("Lev Decl.") ¶ 2 & Ex. 1.

2. Many of the names that Defendants seek to redact are already on the public record, in large part due to Defendants' own actions. Defendants' Motion to Dismiss, and subsequent press reporting, reveal the names of Agent [redacted] and Officer [redacted]. ECF 117-10, at 111:24, 177:10; ECF 117-11 at 326:5; Lev Decl. ¶ 3 & Ex. 2. Defendants previously filed on the public record the unredacted declarations of [redacted], ECF 18-1; *see also* ECF 134-5 at 231:10, and [redacted], ECF 18-2. They produced the declaration of [redacted] with no confidentiality designation, Lev Decl. ¶ 4, and agreed to its unredacted filing

[2] *See also Doe v. Regional Sch. Unit 21*, 2025 WL 833651, at *7–8 (D. Me. March 17, 2025); *Starrett v. U.S.*, 2023 WL 152827 (Fed. Cir. Jan. 11, 2023); *Constand v. Cosby*, 833 F.3d 405, 410 (3d Cir. 2016).

[3] Plaintiffs proposed and agree to the redaction of all PII and contact information including phone numbers, email addresses, etc. The parties' dispute is only about the names of government employees in the records.

on the public record, ECF 132-12. They recently filed deposition excerpts revealing the name of [redacted]. ECF 134-5 at 257:10–11. And they filed on the public record Signal chats revealing the names of [redacted]. ECF 133-2. Many of these individuals have also previously been publicly named in other court cases or press reports. Lev. Decl. ¶ 5 & Ex. 3.[4] With respect to all of these individuals, the proverbial cat is out of the bag—their names are (and will remain) in the public record and there is no basis to redact them from these documents. *Gambale*, 377 F.3d at 144. These public disclosures also undercut Defendants' assertion that merely identifying the names of agents or officers creates a realistic risk of doxing.[5]

3. The names at issue are those of government officials performing their official duties. Aside from the ordinary presumption against sealing, "the weight of third-party privacy interests is reduced where the [matter] involves actions taken by public officials in their official capacity pursuing public business." *In Re Application of Consumer Watchdog*, No. 24-cv-01650, 2024 WL 2104448, at *3 (C.D. Cal. April 11, 2024). That is because "[a]n official acting as a public servant cannot reasonably expect to be shielded from public inquiry into the work done on behalf of the public." *Id. See also Pitts v. United States*, No. 26-cv-00809, 2026 WL 1239297, at *2 (N.D. Ga. May 4, 2026).

4. Finally, the declarations submitted in connection with Defendants' Motion to Seal do not establish a sufficient basis to seal the names of government employees. The declarations speak generally of the risks of revealing PII, or names and PII, but do not assert that revealing names alone would create a substantial risk. *See, e.g.*, ECF 119-1 ¶ 11 ("[redacted]"); ECF 119-2 ¶¶ 13 ("[redacted]"), 15 ("[redacted]"); ECF 119-3 ¶¶ 17 [redacted]

---

[4] *See also* ECF 134-1 at 58:4–7 ("Patricia" was in charge of OCTD). A simple Google search of "Patricia at ICE Boston" identifies [redacted] as an ICE employee. Lev Dec. ¶ 6. The point is not only that these specific individuals have been publicly identified but that officer/agent names are regularly made public.

[5] Indeed, in other cases in this District, Defendants have agreed that the names of law enforcement officers identified in the complaint as John Does do not constitute Confidential Information. Lev Decl. ¶ 7 & Ex. 4.

[redacted]"), 18 ("[redacted]"). Nor are the speculative allegations of the increased risk of doxing credible, as none of the examples of harm cited in the declarations were caused by the mere release of employee names. *See, e.g.* ECF 119-1 ¶ 16; ECF 119-2 ¶ 14; ECF 119-3 ¶ 20. Perhaps for this reason, even the declarants only assert that releasing such information would "[redacted]" ECF 119-2 ¶ 13, or "[redacted], ECF 119-3 ¶14.[6] Such statements do not meet the high bar required to seal judicial records. *Zapata-Rivera v. Unknown Federal Agent John Doe*, No. 25-13850 (D. Mass.), ECF 20 (Apr. 8, 2026) (declining to shield name of agent); *see also id*. ECF 18-3 (ICE declaration alleging doxing risk); Lev Decl. ¶ 8 & Ex. 5 (attaching order and declaration).

## III. Defendants Have Not Met Their Burden Regarding the Other Information They Seek to Seal.

Defendants have proposed sweeping redactions of purported law enforcement sensitive information including Signal chat excerpts, TECS and ICM records, and various operational briefing materials. But much of the information they seek to seal has been made public, and they have failed to meet the high bar to support redacting other information.[7]

1. The sole case that Defendants rely upon to support the extensive sealing they propose is inapposite, as it speaks only of sealing "parts of … exhibits that discuss confidential informants, [agents'] work undercover, or *similarly sensitive law enforcement information*." *United States v. Zambrano*, 2021 WL 3709194 at *2 n.3 (N.D. Ill. Aug. 21, 2021) (emphasis added). Even a cursory review of Defendants' proposed redactions makes clear they do not concern such "similarly sensitive law enforcement information." *See, e.g.*, PI Ex. 45.

[6] The overwrought nature of the declarations generally is exemplified by [redacted]' assertion that [redacted] ECF 119-2 ¶ 11 (emphasis added), ignoring the obvious public accountability reasons for such posts.

[7] In fact, given inconsistencies in Defendants' own filings, Plaintiffs are unsure whether they continue to take the position that certain information should be sealed/redacted as they have argued in their motion.

2. Nor do Defendants' declarations provide sufficient support for sealing. First, the declarants do not state that they actually reviewed the proposed redactions to the exhibits at issue. *Compare* ECFs 119-1 (no reference to review of any materials), 119-3 ¶ 5 (reviewed "those materials" with no specificity or reference to redactions) *with* 119-2 ¶ 7 & Att. A (identifying and attaching specific materials reviewed for PII redactions).[8] Indeed, the declarants *could not* have reviewed the additional redactions that were made one week *after* the filing of the motion and declarations, *see* ECF 137 at 2–3 (explaining Defendants' belated identification of additional documents and redactions), and those additional redactions have *no* support in the record. Similarly, the declarations do not address *at all* PI Exhibits 9, 19, 22, 59, or 61, leaving redactions for those Exhibits entirely unsupported as well.[9]

More substantively, the declarations suffer from another critical flaw—even for the information they do discuss, they contain generic, "conclusory statements" about alleged potential harms that don't withstand scrutiny and do not come close to the "particular factual demonstration of potential harm" required to support sealing judicial records. *FTC*, 830 F.3d at 412. The declarations fail to connect the specific, factual information that Defendants seek to seal to the potential harms they identify. Instead, after describing (or mis-describing) the information at issue, declarants simply assert that disclosure would be harmful without explaining *how* disclosure of the specific information at issue would produce the feared harms, even where the connection between disclosure and harm appears far-fetched. Put simply, the declarations reflect the government's knee-jerk impulse to keep as much sealed as possible, and not a careful fact-based analysis.

[8] [redacted]'s Declaration refers to a few documents by BATES number, as opposed to Exhibit number, further suggesting he did not review the proposed redactions to the Exhibits at issue. ECF 119-1, ¶¶ 5–6, 10–11.

[9] Defendants assert that PI Exhibits 9 and 22 were referenced in the Motion to Seal. ECF 137 at 2. Those Exhibits were not, however, referenced in any of the supporting declarations.

Page limits do not allow a redaction-by-redaction exposition of the overbroad and unsupported nature of Defendants' proposed redactions, but we highlight a few particularly troublesome categories below.[10] Plaintiffs object, however, to all of Defendants' redactions.

*Signal Chat Excerpts (PI Exhibits 47–49)*. Defendants propose substantial redactions to Signal chat excerpts that they describe as containing "[redacted]" ECF 119-3 ¶ 12. Even a cursory review of these chats makes clear that this description is false. To the extent they reveal any [redacted]," it is the tactic of leading observers to their home to intimidate them, a practice that Defendants have publicly acknowledged. ECF 133 at 18. But they nevertheless seek to redact comments such as "[redacted]," PI Ex. 47 at DEFS001196, and "[redacted]," PI Ex. 48 at DEFS001393, apparently because they are embarrassing.[11] Elsewhere, Defendants seek to redact even the fact that Signal was used as a means of communication[12] or that Signal chats are [redacted], although the use of Signal is in the public record. Lev Decl. ¶ 9. *See also* ECF 133-2 (Signal messages).[13]

*ICM/TECS Information*. Defendants created ICM records ([redacted]) about Plaintiff Williams and other observers, [redacted]. ECF 133 at 12; ECF 101-1 at 23. Defendants now seek to redact this (and other) information from

---

[10] Plaintiffs identify the PI Exhibits corresponding to each category highlighted below. Defendants have also proposed redactions to the deposition excerpts filed by Plaintiffs. The declarants reference the depositions generically, but do not identify any specific deposition testimony. *See, e.g.,* 113-1 ¶¶ 8-9; ECF 119-3 ¶¶ 8–9.

[11] Defendants required the redaction of similar information from Plaintiffs' PI Motion. *Compare* ECF 101-1 (unredacted) *with* ECF 132 (redacted) at pages 1, 16, 17, 36.

[12] Defendants agreed to the disclosure of the use of Signal in Plaintiffs' redacted Motion for Preliminary Injunction, ECF 132, and reference it themselves, ECF 133 at 5, but have redacted reference to it elsewhere.

[13] Agent chats have been filed publicly in other cases. *See, e.g.,* Sergio Olmos & Wendy Fry, *Immigration agents used racial slurs during LA sweeps, court records show*, LAist (Aug. 6, 2026), https://tinyurl.com/ytbzxytw.

the TECS records (PI Exs. 18–21); both field names and key data from the ICM records (PI Exs. 34–44); explanations of this information from deposition transcripts; and reference to the [redacted] from the Williams and Neff declarations (ECFs 105-2, 105-4). They have also required the redaction from Plaintiffs' PI Motion of the fact that Williams and others [redacted] ICM/TECS; that ICM [redacted] *Compare* ECF 101-1 (unredacted) *with* ECF 132 (redacted) at 1, 8, 9, 23, 31, 32, 39. Ostensibly, this information must remain sealed to "[redacted]" (though there is no explanation of *how* this information could [redacted]) and to [redacted], ECF 119-3 ¶ 9, and to not reveal [redacted], ECF 119-1 ¶¶ 5–7.

But much of the generic information Defendants seek to shield is already on the public record. The fact that: [redacted], is all information contained in public documents. Lev Decl. ¶ 10 & Exs. 7–8. And Defendants have stated on the public record that "J.C" "recommended [Williams and Neff] for secondary inspection." ECF 133 at 12.

Similarly, TECS records—including [redacted] records such as those at issue here—have been filed publicly in numerous cases, revealing, among other things, that [redacted]

[redacted]. Lev Decl. ¶ 11 & Ex. 9. Declarants' assertions about the harm from making such records public are severely undercut by these past disclosures. And Defendants provide *no reason* why the application of these publicly-known tools to Plaintiffs and other observers specifically—*i.e.*, the specific information at issue here—would lead to any harm.[14]

These TECS and ICM records go to the heart of the case. They show how Defendants labeled observers as [redacted] that require Plaintiff Williams and others [redacted]. Without access to this information, meaningful public discussion of Defendants' conduct cannot occur. Yet Defendants propose to seal all of this information, without having come close to making the "particular factual demonstration of potential harm," let alone the "elevated" showing necessary for a matter of "significant public concern." *FTC*, 830 F.3d at 410, 412.

*OCTD Operations Briefing and Roster (PI Exs. 29, 30, 45)*. Defendants propose substantial redactions from the Operation Catch of the Day (OCTD) operations order email (PI Ex. 29), seek to completely redact the OCTD briefing deck (PI Ex. 30), and to redact job titles, team positions, and other information from the PII-redacted roster of personnel (PI Ex. 45). They seek all this based on the conclusory assertion that disclosure could [redacted] ECF 119-3 ¶ 11. But again Defendants don't explain *how* any of the specific information at issue could possibly lead to these harms. And they again seek to redact information already in the public domain, like the number of strike teams involved; the existence of a [redacted] references to Signal as a means of communication and the names of Signal threads. Lev Decl., ¶ 9 & Ex. 6. But Defendants *themselves* state on the public record that "DHS deployed

[14] Although Plaintiffs have not identified publicly filed ICM records, those records [redacted] reflected in the TECS records. There is no basis to conclude that release of that information would cause any more harm than release of TECS records, which occurs regularly.

159 additional ICE personnel, organized into fourteen joint strike teams ("JSTs") and ten special response teams ("SRTs"). The deployment also included personnel assigned to a Joint Operations Center ("JOC"), which coordinated the operation and communicated with teams in the field, and an intelligence function that provided operational support." ECF 133 at 5. Yet they seek to redact this same information from Plaintiffs' exhibits. Nor have Defendants justified why more targeted redactions could not suffice. Indeed, they even redacted innocuous information such as the fact that team leaders are [redacted]. *See* Exs. 29, 30. The overbreadth of Defendants' proposed redactions is both staggering and emblematic, and supports the Court giving little credence to the conclusory assertions of harm in the declarations that purport to support keeping this and other information from the public. There is a uniquely compelling public interest in understanding how Operation Catch of the Day was managed and unfolded. These documents are critical to that inquiry and should be disclosed. (The burden, of course, is on Defendants to justify *any* redactions, *NOM*, 649 F.3d at 71; Plaintiffs above highlight only some of the most egregious examples of the over-redactions but challenge all of Defendants' proposed redactions to these and other exhibits.)[15]

*HSI Case Management Handbook (PI Ex. 32).* Defendants seek to withhold the HSI Case Management Handbook in its entirety on the grounds that disclosure would allow "[redacted]." ECF 119-3 ¶ 10. This argument might be facially appealing, *except that a prior version of the handbook was released pursuant to FOIA and is publicly available*. Lev Dec. ¶ 12 & Ex. 10. This cat too is

[15] The [redacted], ECF 119-4, suffers from similar deficiencies. It asserts that revealing whether [redacted] *Id.* at 2. But the [redacted] itself makes clear that [redacted]. *Id.* at 2 n.5. And numerous TECS records on the public record in other cases do not have the [redacted] fields redacted. Lev Decl. ¶ 11 & Ex. 9. These facts—and the [redacted]—demonstrate that, as with the declarations, the [redacted] lacks credibility.

already out of the bag. Declarants' willingness to make such serious and far-reaching assertions with respect to so much information that is publicly available draws into question their credibility and demonstrates how utterly Defendants have failed to meet their burden.

*Other public information*. Plaintiffs have catalogued other instances in which Defendants seek to seal information already in the public record, oftentimes due to Defendants' own filings in this very case. Lev Decl. ¶ 9 & Ex. 6. There is no basis to keep such information under seal, *Gambale*, 377 F.3d at 144.

**CONCLUSION**

Defendants' motion should be seen for what it is: a knee-jerk government reaction seeking to seal as much information as possible, as opposed to a thoughtful calibrated effort to identify information whose disclosure would actually present a substantial risk of harm. The First Circuit has repeatedly held that "only the most compelling reasons can justify" sealing judicial records. *Kravetz*, 706 F.2d at 56. Defendants have failed to meet their burden to establish that such compelling reasons exist. To the contrary, they offer only "conclusory statements" that do not discuss the specific factual information at issue and are thus untethered from any "particular factual demonstration of potential harm." *FTC*, 830 F.3d at 412. Defendants seek to seal information that is already on the public record, embarrassing information, and other information for which they fail to make the requisite showing of harm. At the same time, the public has a compelling interest in understanding the government conduct at issue in this case.

Defendants' motion to seal should be denied and Plaintiffs should be permitted to file an unredacted version of their Motion for Preliminary Injunction and minimally-redacted versions of the Exhibits at issue (as identified by Plaintiffs) on the public record. Finally, Plaintiffs request that this motion be adjudicated prior to any hearing on Plaintiffs' Motion for Preliminary Injunction to allow for the public conduct of that hearing.

Dated: October 9, 2026

Respectfully submitted,

*/s/ Ori Lev*
JoAnna Suriani*
Janine M. Lopez*
Ori Lev*
F. Elias Boujaoude*
**Protect Democracy Project**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
(202) 579-4582
joanna.suriani@protectdemocracy.org
janine.lopez@protectdemocracy.org
ori.lev@protectdemocracy.org
elias.boujaoude@protectdemocracy.org

Genevieve Nadeau*
Kenneth Parreno*
**Protect Democracy Project**
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
genevieve.nadeau@protectdemocracy.org
kenneth.parreno@protectdemocracy.org

Jessica Marsden*
**Protect Democracy Project**
101 Glen Lennox, Suite 300
Chapel Hill, NC 27517
(202) 579-4582
jess.marsden@protectdemocracy.org

Melissa A. Hewey
David M. Kallin
**Drummond Woodsum**
84 Marginal Way, Suite 600
Portland, ME 04101
(207) 253-0528
mhewey@dwmlaw.com
dkallin@dwmlaw.com

Karen L. Dunn*
Jeannie S. Rhee*
L. Rush Atkinson*
Yotam Barkai*
John Paredes*
Benjamin J. Cabranes*
**Dunn Isaacson Rhee LLP**
401 9th Street, NW

Washington, DC 20004
(202) 240-2900
kdunn@dirllp.com
jrhee@dirllp.com
ratkinson@dirllp.com
ybarkai@dirllp.com
jparedes@dirllp.com
bcabranes@dirllp.com

**Pro hac vice*