**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

ELINOR HILTON, COLLEEN FAGAN, POLYXENIA PANTOS, and CARLYN WILLIAMS,
on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, Secretary of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JOHN A. CONDON, Acting Executive Director, Homeland Security Investigations; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection; MICHAEL BANKS, Chief, U.S. Border Patrol; THE U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; HOMELAND SECURITY INVESTIGATIONS; U.S. CUSTOMS AND BORDER PROTECTION; U.S. BORDER PATROL; UNIDENTIFIED FEDERAL AGENCIES; and UNIDENTIFIED FEDERAL AGENTS,

*Defendants*.

CASE NO. 2:26-cv-00092-JAW

**PROPOSED INTERVENOR MAINE TRUST FOR LOCAL NEWS L3C'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND FOR ACCESS TO JUDICIAL RECORDS**

## INTRODUCTION

The Maine Trust for Local News L3C, which publishes and is referred to herein as the Portland Press Herald ("the Press Herald"), seeks to intervene under Federal Rule of Civil Procedure 24(b) for the limited purpose of ensuring public access to specific judicial records in this matter pursuant to the First Amendment and common law. This case involves matters of significant public concern, including alleged unlawful actions of federal agents and the government's alleged surveillance of members of the public who engage in debate surrounding immigration enforcement. But to date, much of the critical information put before the Court to decide the pending motion for preliminary injunction, ECF No. 101-1, and motion to dismiss, ECF No. 117 (collectively, the "Records"), remains inaccessible. This sweeping secrecy cannot be reconciled with the "presumptively paramount right of the public to know." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). Defendants' motions to seal should be swiftly denied and these records should be unsealed so they are available to all.

As the First Circuit has long recognized, the public has a presumptive right to access judicial records under both the First Amendment and the common law, *see In re Providence J. Co.*, 293 F.3d 1, 9–10 (1st Cir. 2002). That presumption applies to the Records in this case, which were submitted to help the Court "determin[e] the litigants' substantive rights," *id.* at 10. Further, because they provide important insight into the government's enforcement practices and the conduct and identities of public officials charged with carrying them out, the Records go to the heart of "the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies,'" as well as the role of news organizations like the Press Herald in "publish[ing] information concerning the operation of government." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also Standard Fin. Mgmt. Corp.*, 830 F.2d at 410.

The government's justifications for shielding the Records from the public are, themselves, largely inaccessible. *See* ECF Nos. 135, 143. Plaintiffs' redacted briefs related to sealing indicate, however, that Defendants seek to seal at least "the names of all federal agents, officers and employees," ECF No. 145 at 2, as well as generalized "law enforcement sensitive information," *id.* at 4. Such expansive secrecy cannot be justified under the "strong and sturdy" presumptions of public access that apply here. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410.

The Press Herald respectfully requests that the Court deny Defendants' motions to seal pertaining to the Records, and order Defendants to re-file unredacted versions of the Records. Alternatively, to the extent the Court finds limited redaction warranted, the Press Herald requests "specific findings" that Defendants have met their burden for each proposed redaction, *see In re Providence J. Co.*, 293 F.3d at 15.

**BACKGROUND**

The Press Herald is a Portland-based newspaper published by the Maine Trust for Local News, the state's largest nonprofit news organization and a subsidiary of the National Trust for Local News. The Press Herald regularly covers politics and government enforcement actions, including the surveillance practices at issue in this case. *See, e.g.,* ECF Nos. 142-8, 142-9, 142-13; Salomé Cloteaux & Dana Richie, *ICE Watchers in Maine Say They Were Threatened by Federal Agents*, Portland Press Herald (Jan. 23, 2026), https://perma.cc/T64X-77U7; Emily Allen, *South Portland Couple Say DHS Called After They Took Videos of ICE Activity*, Portland Press Herald (Apr. 29, 2026), https://perma.cc/QKX2-26EQ.

On February 23, 2026, Plaintiffs filed a class action complaint alleging that Defendants, including Department of Homeland Security ("DHS") and various other federal agencies and officials, unlawfully retaliated against Mainers who were observing or protesting immigration

enforcement activity by using surveillance tools to collect and track their personal information. ECF No. 1 at 1. As expedited discovery commenced, the Court granted the parties' request for a heightened Confidentiality Order. ECF No. 28. The Confidentiality Order made clear, however, that it did "not authorize the sealing of Protected Information without Court approval." *Id.* ¶ 13.

On September 11, 2026, Plaintiffs filed a motion for preliminary injunction ("PI Motion") entirely under seal. ECF No. 101. Defendants filed a further motion to seal on September 18, which itself remains sealed today, ECF No. 119. That same day, Defendants filed a motion to dismiss ("MTD"), ECF No. 117, and a motion to seal or redact the five exhibits and four depositions attached thereto, ECF No. 118. Plaintiffs opposed that sealing request, ECF No. 141.

Plaintiffs' PI Motion remained entirely under seal for three weeks—until October 2, 2026, when Plaintiffs filed a redacted version, ECF No. 132, following an order by the Court, ECF No. 128. Plaintiffs' redacted filings reveal that the initial sealing was due to Defendants' delay in conveying their position on the sealing of specific documents and Defendants' overbroad designations of documents under the Confidentiality Order. ECF No. 132-1 at 3.

Also on October 2, 2026, Defendants filed their opposition to Plaintiffs' PI Motion, along with yet another motion to seal that opposition, ECF No. 135. They filed redacted versions of the brief and some exhibits, ECF No. 132. Plaintiffs opposed that sealing request, ECF Nos. 140, 145.

On October 9, 2026, Plaintiffs filed their opposition to Defendants' MTD, and five attachments, fully under seal. ECF No. 143.[1] The motion to seal is itself sealed. On October 16, 2026, the parties filed their respective replies to the PI Motion and MTD. ECF Nos. 148, 149. Yet

[1] Defendants filed proposed redacted versions of Plaintiffs' MTD opposition exhibits at ECF No. 137, but those materials have not been made public as of the filing of this Motion.

again, a substantial portion of the filings in support of preliminary injunction were made under seal. ECF No. 150.

In total, dozens of docket entries related to the PI and MTD briefing—*i.e.*, the Records sought here—are completely inaccessible to the public,[2] and many others are heavily redacted.[3]

## ARGUMENT

### I. The motion to intervene should be granted.

When access to judicial records is at stake, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (cleaned up). The Press Herald falls squarely in that category. Indeed, "[g]athering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Glik v. Cunniffe*, 655 F.3d 78, 82–83 (1st Cir. 2011) (citing *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

In the First Circuit, "permissive intervention is the procedurally correct vehicle" for non-parties to challenge exclusion from access to judicial records. *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009). Federal Rule of Civil Procedure 24(b) allows for such intervention by anyone who files a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1), (b)(1)(B), and each of these requirements is satisfied here. The Press Herald has reported extensively on this case and the underlying government surveillance practices at issue, but its reporters' ability to do so fully and accurately is impaired by their inability to access judicial records at the center of the case.

---

2 *See* App'x A (identifying fully sealed docket entries).
3 *See, e.g.*, ECF Nos. 117-2, 117-10, 132-22, 134-5.

That continued sealing provides the common question of law or fact that Rule 24(b) requires. *See Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1173 n.12 (11th Cir. 2019) (collecting cases). This motion is also timely, *see Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988), as the Records were all filed within the last two months. Finally, no party could be prejudiced by a full airing of the arguments in favor of transparency, *see* Fed. R. Civ. P. 24(b)(3), which "will not disrupt the resolution of the merits," *Pub. Citizen*, 858 F.2d at 786.

The Press Herald is therefore entitled to assert its First Amendment and common law rights to access these records, and its motion to intervene should be granted.

## II. The Records should be unsealed.

"Courts long have recognized that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system." *In re Providence J. Co.*, 293 F.3d at 9 (cleaned up). "This recognition is embodied in two related but distinct presumptions of public access to judicial proceedings and records," under (1) the First Amendment and (2) the common law. *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013). In determining whether judicial records should be sealed, courts consider first whether a right of access attaches to the documents. *Id.* If so, courts next ask whether the party seeking to seal those records has overcome the "presumptively paramount right of the public to know," *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410. Both presumptions attach to the judicial records here, and no party has met or can meet its burden to overcome these "strong and sturdy" presumptions, *id.* The Records should be unsealed.

### A. The First Amendment and common law rights of access attach to the Records.

Because public proceedings "enhance[] both the basic fairness" of our judicial system "and the appearance of fairness so essential to public confidence in the system," *see Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*), the common law and the First

Amendment both provide a presumption of access to certain judicial proceedings and documents. *See Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 9 (1st Cir. 1998) (common law); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (First Amendment).[4] Under either analysis, the press and public have a right of access to the Records here.

The common law presumption extends in both civil and criminal cases to "judicial records," or "materials on which a court relies in determining the litigants' substantive rights," *Standard Fin. Mgmt. Corp.*, 830 F.2d at 408; *accord In re Providence J. Co.*, 293 F.3d at 9. The presumptive right flows from the fact that the "documents [are] submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings." *Kravetz*, 706 F.3d at 58 (quoting *Standard Fin. Mgmt.*, 830 F.2d at 409). This Court has recognized this right of access specifically for documents attached to a motion for preliminary injunction. Order on Motion to Seal, *McKenzie v. Brannan*, No. 2:20-cv-00262 (D. Me. Nov. 12, 2020), ECF No. 61. The Records qualify as quintessential "judicial records" subject to the common law presumption. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 408. They were submitted to the Court to resolve the questions at the core of this case, including whether injunctive relief is warranted and whether Plaintiffs stated a claim, *see* ECF Nos. 106, 117. The Records thus contribute to the court's adjudicative processes and are presumptively public under the common law.

---

[4] *Richmond Newspapers* addressed criminal trials, but every circuit to address the question has concluded that the same presumption extends to certain civil proceedings and records, *see, e.g., N.Y. C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014). The First Circuit, for its part, has acknowledged this body of cases and held that there is at least "a qualified First Amendment right in the public to access newly filed complaints" in civil matters. *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 n.8, 21 (1st Cir. 2022); *see also Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 67 (1st Cir. 2022).

In deciding whether a First Amendment presumption of access attaches to particular records, courts look to "experience and logic"—that is, "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*); *see also In re Boston Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003) (applying *Press-Enterprise II*). Here, both experience and logic counsel that the constitutional presumption attaches to the Records. As the common law analysis shows, *see In re Providence J. Co.*, 293 F.3d at 10 (noting First Amendment right of access "has been derived in large measure" from common law jurisprudence), there is a robust tradition of public access to "materials on which a court relies in determining the litigants' substantive rights," *Standard Fin. Mgmt. Corp.*, 830 F.2d at 408, and the Records fall squarely in that category. As to logic, public access to the Records would "play[] a significant positive role in the functioning" of the civil justice system and, indeed, democracy more broadly. *See Press-Enterprise II*, 478 U.S. at 8. Allowing the public to access the Records—and, accordingly, to understand the basis on which the Court determines the parties' substantive rights in ruling on the PI Motion and MTD—enables informed public discussion of this case and permits the public and press to "serve as an effective check on the system." *Globe Newspaper Co.*, 868 F.2d at 502.

Given the "significant positive role" of public access to civil judicial records, *see Press-Enterprise II*, 478 U.S. at 8, and the robust tradition of protecting such access, the Records are presumptively public under both the First Amendment and common law.

### B. The First Amendment and common law rights of access to the Records have not been and cannot be overcome.

Because the public and press have a right of access to the Records, Defendants bear a high burden to justify sealing or redaction. They have not met it. The First Amendment right of access

can only be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Providence J. Co.*, 293 F.3d at 11 (quoting *Press-Enterprise I*, 464 U.S. at 510). Similarly, "only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common law right of access." *Standard Fin. Mgmt.*, 830 F.2d at 410.[5] In both analyses, the burden to prove that sealing is necessary falls on "those seeking to keep the [materials] hidden from view," *id.* at 410–11, who "must explain, on a document-by-document basis, why sealing is required and how their request satisfies the applicable legal standard." *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015). Likewise, any court order sealing presumptively public records must contain on-the-record factual findings "specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise I*, 464 U.S. at 510; *see also In re Providence J. Co.*, 293 F.3d at 15–16.

No such showings have been made here—at least not publicly. Defendants' motions to seal remain under seal themselves, despite "the presumption of public access" that attaches to such motions. *Giuffre v. Maxwell*, 146 F.4th 165, 181 (2d Cir. 2025). The Press Herald cannot meaningfully address justifications for sealing or redaction that Defendants have withheld from public view. To the extent any interests sufficient to justify sealing have been or will be provided, redactions must be no greater than necessary to serve the asserted interest. *See Press-Enterprise I*, 464 U.S. at 510; *In re Providence J. Co.*, 293 F.3d at 15–16.

From what can be gleaned from the public record, the government's justifications for the secrecy it seeks fall flat. For instance, Defendants' fears about identification or "doxxing" of

---

[5] When both the First Amendment and common law rights attach, courts generally apply the more stringent First Amendment test. *See In re Providence J. Co.*, 293 F.3d at 11.

federal agents are both unfounded and moot. Federal officers are not entitled to anonymity—especially where they are accused of misconduct. *See In re Application of Consumer Watchdog*, No. 24-cv-01650, 2024 WL 2104448, at *3 (C.D. Cal. Apr. 11, 2024) ("An official acting as a public servant cannot reasonably expect to be shielded from public inquiry into the work done on behalf of the public."); *see also Zapata Rivera v. Unknown Fed. Agent John Doe*, Case No. 4:25-cv-13850 (D. Mass. Mar. 5, 2026), ECF No. 13 (denying federal agent defendant's request to proceed by pseudonym). To the contrary, the need for transparency is higher—not lower—in matters regarding law enforcement activities, to enable the public and press to hold government agents accountable. *See Glik*, 655 F.3d at 82–83 (1st Cir. 2011). Courts "routinely den[y]" requests to block disclosure where "there is reason to believe the documents sought may shed light on government misconduct," because secrecy "does not serve 'the public's interest in honest, effective government.'" Order, *AAUP v. Rubio*, Case No. 1:25-cv-10685-WGY (D. Mass. Jan. 22, 2026), ECF No. 314. Further, the deponent agents have already been identified publicly, including in unsealed documents filed by Defendants, *e.g.*, ECF 133-2. "[I]nterests in privacy fade when the information involved already appears on the public record." *Kravetz*, 706 F.3d at 63 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95 (1975)); *see also Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 506 n.17 (1st Cir. 1989) ("prior publicity weighs strongly against sealing"). Any purported privacy interest in the sealing of agents' names has been dissolved by the government's disclosure of those names in the public record.

Additionally, mere designations of material as protected pursuant to the Confidentiality Order do not justify sealing. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418–21 (5th Cir. 2021) (explaining that "[p]arty-agreed secrecy" at the discovery stage cannot satisfy the "arduous" standard for sealing records "at the *adjudicative* stage, when materials enter the court record");

*Lipman v. Budish*, 974 F.3d 726, 754 (6th Cir. 2020) (similar); *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 448 (similar); ECF No. 28 ¶ 13 ("This Order does not authorize . . . sealing.").

Information also may not be sealed simply because it implicates "law enforcement" activities, ECF No. 145 at 4, or was "compiled for law enforcement purposes," ECF No. 28 ¶ 3. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006) ("Simply invoking a blanket claim, such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access")*; Cole v. Maine*, No. 1:17-cv-00071-JAW, 2018 WL 276682, at *2–4 (D. Me. Jan. 3, 2018) (declining to wholly seal records based on confidentiality requirements in Maine Civil Service Law). Courts in this Circuit have recognized a valid sealing interest for law enforcement records in only limited circumstances: if "disclosure might reveal the location of electronic surveillance equipment or the identity of a Government informant." *United States v. Lilly*, 185 F.R.D. 113, 115 (D. Mass. 1999). There is no basis in the public record to believe such a showing could be made here.

Against this backdrop, the analysis here is straightforward: the public's interest in access is extremely high, and no interest in sealing (or extensive redaction) has been established. The Records should be unsealed and unsupported redactions should be removed.

## CONCLUSION

For the foregoing reasons, the Press Herald respectfully requests that the Court grant its limited motion to intervene and direct that the Records be unsealed and/or order Defendants to re-file the Records without the redactions for which they have not met their burden.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Sigmund D. Schutz*
Sigmund D. Schutz
Alexandra A. Harriman
Preti, Flaherty, Beliveau & Pachios, LLP
One City Center
Portland, ME 04101
(207) 791-3000
sschutz@preti.com
aharriman@preti.com

Renee M. Griffin*
Samantha Drake*
Reporters Committee
For Freedom of the Press
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 800-3247
rgriffin@rcfp.org
sdrake@rcfp.org

* *pro hac vice* appl. forthcoming

*Counsel for Proposed Intervenor*
*Maine Trust for Local News, L3C*